In re James C. BALAJA & Therese A. Lucas–Balaja, Debtors.

Bankruptcy No. 90 B 16971.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 4, 1996.

David J. Boersma, Wheaton, Illinois, for debtors.

Gina B. Krol, Trustee, Cohen & Krol, Chicago, Illinois.

M. Scott Michel, Chicago, IL, U.S. Trustee.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This Chapter 7 case is before the court on the motion of the United States Trustee for dismissal, pursuant to Section 707(b) of the Bankruptcy Code (Title 11, U.S.C.). The motion asserts that to grant bankruptcy relief to the debtors would be a substantial abuse of the provisions of Chapter 7 of the Bankruptcy Code—on the sole ground that the debtors have sufficient postpetition income to pay a substantial portion of their debts. The motion thus presents the question of whether Section 707(b) imposes a per se "future income" test, requiring Chapter 7 cases to be dismissed whenever the debtors' income would permit payment, over time, of a significant part of their indebtedness. For the reasons set forth below, it appears that the debtors' ability to pay part of their indebtedness from future income is not sufficient, in itself, to require dismissal under Section 707(b):

### Jurisdiction

The district court has exclusive jurisdiction over bankruptcy cases—cases "under" Title 11, U.S.C.—pursuant to 28 U.S.C. § 1334(a). The district court may refer such cases to bankruptcy judges pursuant to 28 U.S.C. 157(a), and by General Rule 2.33, the District Court for the Northern District of Illinois has done so. Bankruptcy judges are accorded the power to "hear and determine" referred cases by 28 U.S.C. § 157(b). This power encompasses ruling on motions to dismiss.

### Findings of Fact

The facts relevant to the pending motion are undisputed. The debtors, James Balaja and Therese Lucas–Balaja, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Balajas' debts, as scheduled, were primarily consumer debts, and included unsecured credit card debt of about $38,500. The Balajas incurred this credit card debt over an eight year period, charging $6,300 more on their credit cards than they paid, and accumulating $32,200 in finance charges. The Balajas' schedules reflect that they are employed, and that their monthly net income of $3,589 is offset by expenses of $2,939, resulting in monthly disposable income of $650. This figure, however, does not include interest or principal payments on the credit card debt. The minimum monthly principal and interest payments on the credit card debt, at the time of the debtor's filing, totalled about $2,930, leaving them entirely unable to pay their debts. Moreover, at a monthly rate of 1.67% (20% annually), the interest alone on the credit card debt was $643. Thus, without bankruptcy relief, and merely paying credit card interest, the debtors' disposable income would be about $7 monthly.

Nevertheless, since interest does not accrue on prepetition unsecured claims during the pendency of a bankruptcy case—see 11 U.S.C. § 502(b)(2), providing for disallowance of claims for unmatured interest—the Balajas could pay $23,400 (about 60% of their unsecured debt) into a three-year Chapter 13 plan and $39,000—nearly all of their unsecured debt—into a five-year Chapter 13 plan. (These percentages, however, would not actually be paid to creditors in a Chapter 13 case, because of the need, pursuant to 28 U.S.C. § 586(e)(1)(B), for fees of the standing trustee to be paid from the funds paid by the debtors.)

The United States Trustee filed a motion to dismiss the bankruptcy case under Section 707(b) of the Bankruptcy Code. The motion argued no misconduct on the part of the Balajas, but rather relied solely on the debtor's income in relation to the debt sought to be discharged. The debtors opposed the motion.

### Conclusions of Law

This case presents a single question: whether Section 707(b) requires the dismissal of a Chapter 7 case whenever the debtors' current income would allow them to pay a significant portion of their debts, either outside of bankruptcy or in a Chapter 13 case. Although some courts of appeal have interpreted Section 707(b) to mandate dismissal in these circumstances, the better interpretation of Section 707(b) requires a broader consideration.

*The divided case law.* In June, 1984, Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 355 (1984). Among these amendments was the addition of Section 707(b) to the Bankruptcy Code, providing for the dismissal of Chapter 7 cases if the granting of relief would be a "substantial abuse of the provisions of [Chapter 7]."[1]

Neither Section 707(b) nor any other provision of the Bankruptcy Code defines "substantial abuse" and the Seventh Circuit has not ruled on the issue. Other courts have reached no consensus on the meaning of the phrase, acknowledging that a debtor's income is relevant to the question of substantial abuse, but disagreeing about whether it is dispositive.

The first court of appeals to deal with the issue was the Ninth Circuit, in *In re Kelly,* 841 F.2d 908, 913–15 (9th Cir.1988). In *Kelly,* the court affirmed a decision dismissing a case under Section 707(b) on the ground that the debtors would be able to pay nearly all of their debts in a three-year Chapter 13 plan. 841 F.2d at 915. In its opinion the Ninth Circuit cited, with favor, *In re Hudson,* 56 B.R. 415, 419 (Bankr.N.D.Ohio 1985), for the proposition that "substantial abuse occurs whenever debtor has ability to repay substantial portion of his debts under chapter 13," and stated its holding as follows:

> [T]he debtor's ability to pay his debts when due, as determined by his ability to fund a chapter 13 plan, is the primary factor to be considered in determining whether granting relief would be a substantial abuse.

841 F.2d at 914. The holding of *Kelly* was then adopted by the Eighth Circuit. *In re Walton,* 866 F.2d 981, 982–85 (8th Cir.1989); *United States Trustee v. Harris,* 960 F.2d 74, 76–77 (8th Cir.1992). *Harris,* in particular, made clear the Eighth Circuit's view that dismissal under Section 707(b) is required whenever debtors have the ability to fund a Chapter 13 plan at a substantial level, up-

holding the reversal of a contrary bankruptcy court decision.

The Sixth Circuit, in *In re Krohn,* 886 F.2d 123, 126–28 (6th Cir.1989), while stating that other circumstances might also give rise to substantial abuse, essentially accepted the *Kelly* interpretation of Section 707(b), and even expanded it—holding that a Chapter 7 case filed by debtor with income in excess of current expenses (and hence an ability to repay some indebtedness) could be dismissed for substantial abuse even though the debtor was not eligible for relief under Chapter 13. The court noted in this connection that there is no constitutional right to bankruptcy relief, and suggested that the debtor might employ state law remedies or "good, old-fashioned belt tightening" to address his financial difficulties. 886 F.2d at 128. The Eighth Circuit likewise adopted this expansion of *Kelly.* *Fonder v. United States,* 974 F.2d 996, 999 (8th Cir.1992) (dicta).

Taken together, the holdings of *Kelly, Harris,* and *Krohn* result in a per se income test being applied under the substantial abuse standard of Section 707(b): any grant of relief to a Chapter 7 debtor with significant disposable income is a "substantial abuse," because such a debtor would be able to make payments to creditors either in Chapter 13 or outside of bankruptcy.

In contrast to *Kelly, Harris,* and *Krohn*— which support the position taken by the United States Trustee in the present case—the Court of Appeals for the Fourth Circuit, in *In re Green,* 934 F.2d 568 (4th Cir.1991), expressly rejected the per se income test for substantial abuse. While agreeing with *Kelly* that a debtor's ability to pay his or her debts is a "primary" factor to be considered in determining whether granting Chapter 7 relief would be a substantial abuse, the court found that other factors also had to be considered, and that the ultimate determination, to be assessed in consideration of the totality of circumstances, was whether there is "abuse of the bankruptcy process by a debtor

---

1. Section 707(b) of the Bankruptcy Code provides in pertinent part:

 After notice and a hearing, the court … may dismiss a case filed by an individual debtor under [Chapter 7] whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

seeking to take unfair advantage of his creditors." 934 F.2d at 572. A number of lower court decisions, both before and after *Green*, similarly reject a per se income test. *See, e.g., In re Keniston*, 85 B.R. 202, 224, 229 (Bankr.D.N.H.1988) (substantial abuse requires egregious circumstances or unfair advantage); *In re Butts*, 148 B.R. 878, 880 (Bankr.N.D.Ind.1992) (substantial abuse a "flexible concept"); *In re Gentri*, 185 B.R. 368, 373–75 (Bankr.M.D.Fla.1995) (employing *Green's* "totality of circumstances"). The other circuit courts of appeal have not passed on the question of the meaning of substantial abuse under Section 707(b).

*The meaning of substantial abuse.* Three separate considerations indicate that "substantial abuse" in Section 707(b) is best understood as involving more than an ability to pay a significant portion of debts from future income, and thus that approach taken by the Fourth Circuit in *Green* is preferable to the per se rule of *Kelly, Harris,* and *Krohn.*

■ *First,* any statute should be interpreted, if possible, to give effect to all of its provisions. *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 103, 109 S.Ct. 2818, 2823–24, 106 L.Ed.2d 76 (1989) ("It is our duty 'to give effect, if possible, to every clause and word of a statute,'" quoting *United States v. Menasche*, 348 U.S. 528, 538–539, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955), and *Montclair v. Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391, 394–95, 27 L.Ed. 431 (1883).) The concluding sentence of Section 707(b) provides, "There shall be a presumption in favor of granting the relief requested by the debtor." Under the per se rule, this provision has no significant effect: a court simply assesses a Chapter 7 debtor's current income and expenses, derives a disposable income amount, and compares this to the amount of outstanding indebtedness. If a significant degree of repayment thus appears possible, the Chapter 7 case is dismissed. In this analysis there are no issues as to which a presumption would be operative. In contrast, the *Green* decision, in directing the court to determine whether, from all of the relevant circumstances, the debtor has sought to obtain an unfair advantage over creditors, presents a factual issue as to which

the presumption specified by Section 707(b) carries real weight: the debtor is presumed to have acted fairly (and hence be entitled to his or her choice of Chapter 7 relief), and the burden is on the proponent of dismissal to demonstrate the contrary.

■ *Second,* in view of the ambiguity of phrase "substantial abuse," it is appropriate to consider prior law, and to harmonize the new legislation with that prior law unless there is a clear indication in the legislative history that a fundamental change was intended. *Cf. Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992) ("[T]his Court has been reluctant to accept arguments that would interpret the Code ... to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history").

A policy of extending "straight bankruptcy" relief—liquidation of nonexempt assets followed by discharge—despite a debtor's having disposable income was well-established prior to the adoption of the Code. In *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934), the Supreme Court refused to enforce an assignment of wages after the filing of a bankruptcy case, on the ground that this would impair the fresh start that bankruptcy was intended to provide to the debtor:

"One of the primary purposes of the bankruptcy act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.'" *Williams v. U.S. Fidelity & Guar. Co.*, 236 U.S. 549, 554–555 [35 S.Ct. 289, 290, 59 L.Ed. 713]. This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt. . . .

... The new opportunity in life and the clear field for future effort, which it is the purpose of the Bankruptcy Act to afford the emancipated debtor, would be of little value to the wage-earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy.

The Bankruptcy Code, prior to the enactment of Section 707(b), affirmed this policy of granting bankruptcy relief despite disposable income. Section 109(b) of the Code, which sets forth the eligibility requirements for Chapter 7 debtors, includes no requirement with respect to insufficiency of income to pay debts, and Section 707 of the Code [renumbered as 707(a) after the adoption of Section 707(b)] excludes the ability to pay debts from future income from its list of grounds for dismissal of Chapter 7 cases. That omission was intentional. The House and Senate committee reports accompanying the Bankruptcy Code used identical language in rejecting the notion that the ability to pay debts from future income should disqualify a debtor from Chapter 7 relief:

> The section does not contemplate ... that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin.News pp. 5787, 5880, 6336. The House report went on to comment that "[t]he Committee has rejected that alternative [of mandatory Chapter 13] in the past, and there has not been presented any convincing reason for its enactment in this bill." H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977), U.S.Code Cong. & Admin.News p. ——.

The legislative history of Section 707(b) is discussed below. However, the decisions adopting the per se rule for measuring "substantial abuse" point to no significant legislative history indicating that Section 707(b) was intended to effect a fundamental change

in the "fresh start" policy that allows even debtors with disposable income to obtain straight bankruptcy relief.

*Third,* the legislative history of Section 707(b), though somewhat complex, points in a direction opposite to that of the per se approach.

*a. S.2000.* In 1981, the Senate Judiciary Committee of the 97th Congress proposed a bill, S. 2000, that expressly modified the fresh start policy described above. It would have amended Section 109 of the Code to "prohibit an individual from obtaining relief under chapter 7 where that individual can pay 'a reasonable portion of his debts out of anticipated future income.'" S.Rep. No. 446, 97th Cong., 2d Sess. 34 (1982). The committee report accompanying the proposed legislation stated its intent forcefully, setting forth a detailed "future income test" quite similar to the "per se" interpretation of substantial abuse adopted by *Kelly, Harris,* and *Krohn.*

> Congress intends that the major consideration shall be the assessment of what percentage of debts could be paid over a 3- to 5-year period if the projected discretionary income available to the debtor were to be applied to the satisfaction of those debts in a deferred monthly payment plan. Where an individual debtor could clearly retire as much as 75 percent of such debts during that period of time, that debtor would presumably be found to have the ability to pay a reasonable portion of his debts, and would thus not qualify for chapter 7 relief. Conversely, if the debtor could pay no more than 25 percent of his debts during the same period, the debtor clearly does not have substantial debt paying ability and would be eligible for chapter 7 relief.

*Id.* at 36–37.

However, this new approach to the eligibility for Chapter 7 relief was vigorously opposed by a minority of the committee, precisely on the ground that it deviated from the fresh start policy enunciated in *Local Loan.* The minority views appended to the committee report accompanying S. 2000 assert that the bill "eliminates the fresh start corner-

stone of American bankruptcy law," and that if the bill became law, "debtors will not have the automatic right to declare chapter VII [sic] bandruptcy [sic]; instead they may be put to the burdensome task of demonstrating that they cannot pay a 'reasonable portion of their debts' out of 'anticipated future income' over a 3 to 5 year period." *Id.* at 51. The minority views contained extensive arguments against the future income test. *Id.* at 57–63. The full Senate never acted on S. 2000 during the 97th Congress. S.Rep. No. 65, 98th Cong., 1st Sess. 2 (1983).

*b. S. 445.* In the next Congress, the text of S. 2000, together with other provisions, was introduced as S. 445. S.Rep. No. 65, 98th Cong., 1st Sess. 2 (1983). Following its introduction, further committee hearings were held, and discussions took place among committee members. As a result, the future income test was eliminated, and, in its place, the substantial abuse language now in Section 707(b) was introduced as an addition to Section 305 of the Code. *Id.*[2] The committee report accompanying S. 445 described the situation as follows:

> The desire to broaden the use of Chapter 13 resulted in the inclusion of language in S. 445, as introduced, which would have incorporated a "future income" threshold test in the law. Under this test, the courts would have systematically evaluated the ability of debtors to pay a reasonable portion of debts out of future income. However, these provisions of S. 445 were deleted.

*Id.* at 3–4.

> [A newly proposed provision] authorizes a court to dismiss a case brought under Chapter 7 if the filing represents a substantial abuse of that Chapter.

*Id.* at 53.

The committee report went on to discuss the effect of the substantial abuse provision, in the only discussion of the substantial abuse language in any committee report:

---

**2.** Section 203(a) of S. 445 provided that Section 305 of the bankruptcy code should be amended by adding a new subsection d(1). In relevant part, the new subsection provided:

[T]he court . . . may dismiss a case under chapter 7 of this title filed by an individual debtor if

This provision represents a balancing of two interests. It preserves the fundamental concept embodied in our bankruptcy laws that *debtors who cannot meet debts as they come due should be able to relinquish non-exempt property in exchange for a fresh start.* At the same time, however, it upholds creditors' interests in obtaining repayment where such repayment would not be a burden.

Crushing debt burdens and severe financial problems place enormous strains on borrowers and their families. Family life, personal emotional health, or work productivity often suffers. By enabling individuals who cannot meet their debts to start a new life, unburdened with debts they cannot pay, the bankruptcy laws allow troubled borrowers to become productive members of their communities. Nothing in this bill denies such borrowers with unaffordable debt burdens bankruptcy relief under Chapter 7. *However, if a debtor can meet his debts without difficulty as they become due, use of Chapter 7 would represent a substantial abuse.*

*Id.* at 53–54. (Emphasis added.)

The committee thus understood the substantial abuse concept as standing in sharp contrast to the rejected future income test. Instead of requiring dismissal of a Chapter 7 case whenever the debtor had sufficient income to pay some substantial part of his or her indebtedness, as with the future income test, "substantial abuse" was seen as requiring dismissal only where the debtor has sufficient income to pay all of his or her indebtedness, without difficulty, as it becomes due.

*c. S. 1013.* At the same time that S. 445 was being considered, the Senate was also debating S. 1013, a bill designed to address the jurisdictional questions raised by the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). On April 27, 1983, the Senate includ-

---

it finds that the granting of relief under such chapter would be a substantial abuse of the provisions of such chapter. In determining the question of substantial abuse, there shall be a presumption in favor of granting the relief requested by the debtor.

ed the complete text of S. 445, with its substantial abuse provisions, as an amendment to S. 1013, and then passed the bill as amended. 129 Cong.Rec. S9953 (text of amendment), S9975 (amendment agreed to), S10001 (amended bill passed) (1983). The sponsor of S. 1013 acknowledged that the legislative history of S. 445 fully applied to S. 1013. *Id.* at 9971.

*d. H.R. 5174.* S. 445 was never acted on by the House of Representatives. Various consumer bankruptcy bills were introduced in the House in 1983. *E.g.,* H.R. 3205, 98th Cong., 1st Sess. (June 2, 1983) (explicitly imposing, in Section 2, a future income test for Chapter 7 relief), and H.R. 1800, 98th Cong., 1st Sess. (March 2, 1983) (providing for dismissal of any consumer bankruptcy case that would be a "substantial abuse" of the provisions of the chapter under which it was filed). However, none of this legislation emerged from committee, and the House passed no bankruptcy legislation in 1983. Rather, in March of 1984, the House considered and passed, under a closed rule, H.R. 5174, a bill proposed by the House leadership, and not considered previously in committee. 130 Cong.Rec. H6188–6249 (1984). This bill contained the same "substantial abuse" language as S. 1013 and S. 445, but added this language to Section 707 of the Code, rather than Section 305. One representative noted that the legislation "buil[t] upon ... the consumer bankruptcy legislation unanimously passed last April in the Senate." 130 Cong.Rec. H6221 (1984) (remarks of Rep. Long).

On June 19, 1984, the Senate passed its version of H.R. 5174, leaving the substantial abuse provision intact. 130 Cong.Rec.

S17158 (1984). A conference committee later issued a report resolving other differences between the two houses. In introducing this report to the House, Rep. Rodino stated: "These amendments are fair to both debtors and creditors, and contain no threshold or future income test." 130 Cong.Rec. H20224 (1984).³ H.R. 5174 was enacted into law.

In summary, the legislative history of Section 707(b) thus makes two points clearly: (1) that Congress considered and rejected a test for Chapter 7 relief that would automatically have excluded debtors with the ability to pay a significant portion of their debts from future income, and (2) that the only definition of "substantial abuse" in relevant committee reports is that it encompasses debtors who "can meet [their] debts without difficulty as they become due."

 In light of this history, together with the statutory presumption and the prior law regarding eligibility for bankruptcy relief, Section 707(b) should not be interpreted to impose a per se income test. Rather, in ruling on motions under this section, there should be consideration of all relevant factors bearing on the debtor's relationship with its creditors. If, from this consideration it appears that the debtor is seeking to obtain an unfair advantage over his or her creditors, in that the debtor could have paid his or her debts as they become due, without difficulty, then the motion to dismiss should be granted. On the other hand, if it appears that the debtor has genuine difficulty in meeting his or her obligations as they become due, and that this situation was not deliberately constructed by the debtor in anticipation of bankruptcy, then the debtor's choice of Chapter 7 relief should be allowed.⁴

3. Another congressman, Glenn Anderson of California, made a statement indicating that ability to fund a Chapter 13 case would be grounds for dismissal as substantial abuse. 130 Cong.Rec. H20233 (1984). Mr. Anderson, however, was not a sponsor of the legislation or a member of the conference committee. Senator Metzenbaum, who was a conferee, echoed the comments of Representative Rodino, the senior House conferee, that the legislation included no future income test. 130 Cong.Rec. S17158 (1984).

4. The decisions in *Walton,* 866 F.2d at 983, and *Krohn,* 886 F.2d at 126, argue that the per se

income test is necessary to avoid making Section 707(b) simply a "good faith" requirement, duplicative of prior Code provisions. This argument is incorrect. Whether prior law allowed dismissal of Chapter 7 cases for lack of good faith in filing is debatable. *In re Kragness,* 63 B.R. 459, 465 (Bankr.D.Or.1986) ("A different level of conduct may be required for debtors in a Chapter 7 liquidation where all non-exempt assets are surrendered to a trustee for liquidation as opposed to Chapter 11 and Chapter 13 cases where the debtor normally remains in possession of non-exempt assets"); *In re Latimer,* 82 B.R. 354, 363–64 (Bankr.E.D.Pa.1988) (expressing doubt that

■ *Application of the standard.* In the present case, the debtors plainly could not pay their debts as they became due. Minimum payments on their credit card debt, together with their living expenses, substantially exceeded their income. Even payments of interest alone would have left the debtors with virtually no disposable income. There has been no showing that the debtors deliberately constructed this situation in order to obtain an unfair advantage over their creditors in bankruptcy. To the contrary, it appears that the debtors gradually, over a long period of time, found credit card interest increasing their debt to unmanageable levels. Chapter 7 relief in such circumstances is not the "substantial abuse" envisioned by Section 707(b).

### Conclusion

For the reasons set forth above, the trustee's dismissal motion pursuant to Section 707(b) of the Bankruptcy Code is denied.

there is any good faith filing requirement in Chapter 7). However, the prior law, as reflected in the original legislative history of Section 707 quoted earlier in this opinion, plainly precluded dismissal of Chapter 7 cases based on the debtor's ability to pay debt from future income. H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 94 (1978). Under the interpretation of Section 707(b) set forth above, that law is changed so that, in some circumstances, a Chapter 7 case may now be dismissed because the debtor's income allows payment of debt as it becomes due.