**In re Kenneth/Linda MUSIC, Debtors.**

**No. 03–38133.**

United States Bankruptcy Court,
N.D. Ohio.

March 16, 2004.

Nancy S. Schramski, Lima, OH, for Debtors.

Andrew R. Vara, Cleveland, OH, for U.S. Trustee.

Bruce C. French, Lima, OH, trustee.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

Before this Court is the United States Trustee's Motion to Dismiss, and the Debtors' Response/Objection thereto. On March 9, 2004, a hearing was held on this matter. Based upon the arguments made at this Hearing, the Court took the matter under advisement so as to be able to conduct a thorough review of the matter. The Court has now conducted this review, and for the reasons set forth herein, finds that the Trustee's Motion to Dismiss should be Granted, but that such Order should be stayed until March 29, 2004, so as to afford the Debtors the opportunity to convert their Case to a Chapter 13 bankruptcy.

The following are the relevant circumstances presented to the Court which, in accordance with Bankruptcy Rule 7052, constitute this Court's findings of fact:

The Debtors, who are husband and wife, filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code on October 9, 2003.

Although one of their children has "special needs," the Debtors have no minor children.

The Debtors' respective gross annual income for the years 2001 and 2002 was $107,003.00 and $81,812.12.

The Debtor. Kenneth Music recently retired from the Ford Motor Company. Presently, the Debtors' have a net monthly income of approximately $4,500.00.

The Debtors, as set forth in their schedules, intend to reaffirm on two debts: a home mortgage debt of $128,068; and a debt for a riding mower valued at $1,300.00.

At the time of filing, the Debtors through security arrangements and leases, maintained four automobiles.

The Debtors have approximately $64,000.00 in unsecured nonpriority debt and a very small amount of priority, unsecured debt for unpaid taxes. Additional unsecured debt may be incurred as the result of deficiencies assessed on two surrendered vehicles.

Most, if not all of the Debtors unsecured nonpriority debt is the result of expenditures on credit cards.

The Debtors put forth that they presently have monthly living expenses of $4,326.68. Included therein, are the following expenses: a $1,205.63 mortgage payment; $593.86 electricity/heating fuel; $250.95 for TV, Refuse and cellphone; transportation expenses, exclusive of car payment, of $300.00; $100.00 for recreation; and $881.65 for two auto payments.

After the United States Trustee filed its Motion to Dismiss, wherein a mistake in undisclosed income was pointed out, the Debtors revised upward their monthly expenditures by over $300.00.

Section § 707(b) provides that, when an individual holds primarily consumer debt, a court may dismiss the case if it finds that its continuation would result in a "substantial abuse" of the bankruptcy

process. This section was added by the Congress of the United States in 1984 "in response to concerns that some debtors who could easily pay their creditors might resort to chapter 7 to avoid paying their obligations." *In re Shepherd,* 147 B.R. 422, 424 (Bankr.N.D.Ohio 1992).

■ Broken down, § 707(b) contains three overall elements: (1) the debtor must be an individual; (2) the debts must be primarily consumer debts; and (3) granting relief to the debtor under Chapter 7 would be a "substantial abuse." *In re Wisher,* 222 B.R. 634 (Bankr.D.Colo. 1998). With respect to the applicability of these elements, § 707(b) directs that "[t]here shall be a presumption in favor of granting the relief requested by the debtor."

■ In this case, the existence of the first element is evident, and based upon a review of those credit card statements provided to the Court, it can also be assumed that the majority of the Debtors' obligations are "consumer debts." Turning then to the question of "substantial abuse," the Sixth Circuit Court of Appeals, in the case of *In re Krohn,* held that, for purposes of § 707(b), "[s]ubstantial abuse can be predicated upon either a lack of honesty or want of need." 886 F.2d 123, 126 (6th Cir.1989). For this purpose, the principal issue with respect to "honesty" is whether the debtor is "merely seeking an advantage over his creditors . . . ." A determination of "need," on the other hand, is made by looking to whether truly the debtor's "financial predicament warrants the discharge of his debts in exchange for liquidation of his asserts." *Id.* Of particular importance in this respect is whether a debtor has the ability to "repay his debts out of future earnings." To answer these questions, the Court, in *In re Krohn,* held that a court should consider the "totality of the circumstances." *Id.*

■ In looking to the totality of circumstances, the following inferences and conclusions can be drawn from the findings of fact made by this Court:

In the past, the Debtors, despite having a more than modest income, lived beyond their means. To finance their lifestyle, the Debtors incurred a substantial amount of consumer credit card debt.

The Debtors' ability to live beyond their means became extremely difficult, if not impossible to sustain after the retirement of Kenneth Music.

The Debtors, although making some reductions in their monthly expenses, still maintain expenses at a level which, in light of Kenneth Music's retirement and other general considerations, are unnecessary. Pursuant thereto, this Court makes the following adjustments in the Debtors' monthly budget: $250.00 electricity/heating fuel; $75.00 for TV, Refuse and cell-phone; transportation expenses, exclusive of car payment, of $100.00; $50.00 for recreation; and $450.00 for *one* auto payment.

Also in light of Mr. Music's retirement and given that the Debtors no longer having any minor children, a monthly housing expense of $1,205.63 seems extravagant for people who cannot afford to pay their voluntarily incurred obligations. Accordingly, the Court allocates $750.00 for a housing expense. (In this regard, it is noted that the Debtors' valued their home at $132,000.00, thus leaving them sufficient equity to avoid a deficiency balance.)

Based upon the above adjustments, the Debtors have in the neighborhood of $1,500.00 available in monthly disposable income to repay their unsecured debts. When set against their unsecured debt load, such an amount, even after accounting for a reasonable amount of additional

unsecured debt (i.e., auto deficiency balances), is clearly sufficient to fund a Chapter 13 plan of reorganization with relative ease.

Also, given the timing of events, the Court finds it interesting that the Debtors, after the United States Trustee pointed out a deficiency in their monthly income, suddenly discovered that they needed to revise significantly upward their monthly expenses. What is especially disconcerting here is that this increase in monthly expenditures stems not from a confluence of circumstances, but rather from just one expense: a $322.86 dollar increase in the Debtors' monthly electric and heating expenditures. However, as this Court previously noted, "[w]hile realizing that month-to-month variations in income and expenses are inevitable, it stretches the imagination that, if owed and in existence prepetition, the Debtors would innocently forget to set forth such a significant amount in prepetition expenses ...." *In re Pier,* 310 B.R. 347, 358, 2004 WL 1238008, *8 (Bankr.N.D.Ohio February 20, 2004). Moreover, the exhibits submitted by the Debtors tend to show that this increase in expense stems not from an average of month-to-month charges, but rather from deficiencies incurred in prior months. All the same, from both a "need" and "honesty" standpoint, the Debtors' creditors should not have to pay for a $593.86 electricity/heating fuel expense.

Based therefore upon the above conclusions and inferences, the totality of circumstances strongly demonstrate that, under the standard set forth in *In re Krohn,* the Debtors have neither the requisite "honesty" nor "need" to proceed with their Chapter 7 bankruptcy case. As such, unless converted to a Chapter 13 bankruptcy, this case must be dismissed under 11 U.S.C. § 707(b) for "substantial abuse." In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b) if, at the open of business on March 29, 2004, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.