**In re Charles Ellsworth KROHN aka Charles E. Krohn, Appellant/Debtor.**

**No. 88–3527.**

United States Court of Appeals, Sixth Circuit.

Argued June 5, 1989.

Decided Sept. 21, 1989.

124

Bruce R. Freedman (argued), Holub & Freedman, Akron, Ohio, for appellant/debtor.

Bruce G. Forrest (argued), William Kanter, Dept. of Justice, Appellate Staff–Civil Div., Washington, D.C., Conrad J. Morgenstern, Office of the U.S. Trustee, Cleveland, Ohio, for appellee.

Before KEITH and NORRIS, Circuit Judges; and EDWARDS, Senior Circuit Judge.

ALAN E. NORRIS, Circuit Judge.

This is an appeal from the dismissal, pursuant to 11 U.S.C. § 707(b),[1] of a petition for relief under Chapter 7 of the Bank-

---

1. 11 U.S.C. § 707(b) provides:

After notice and a hearing, the court, on its *own motion or on a motion by the United* States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a *substantial abuse* of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. (Emphasis supplied.)

ruptcy Code. 11 U.S.C. §§ 701 *et seq.* Because under the facts of this case granting relief would be a substantial abuse of the chapter, the order dismissing the petition is affirmed.

## I.

The debtor, Charles Ellsworth Krohn, filed a petition for Chapter 7 relief on December 12, 1986. As part of the bankruptcy proceedings, a hearing was scheduled concerning a reaffirmation agreement between Krohn and Society National Bank. Krohn intended to reaffirm an unsecured debt of $19,626.49 in exchange for the bank agreeing to finance his purchase of a new home valued at $156,000. As a result of that hearing, the bankruptcy court reviewed the case file and sua sponte issued an order requiring Krohn to appear pursuant to § 707(b). That hearing occurred on July 9, 1987, and, on November 3, 1987, the bankruptcy judge determined that granting Krohn Chapter 7 relief would be a substantial abuse of the chapter, and dismissed his petition.

According to the court's findings of fact, Krohn had been employed as a financial business manager with a large industrial firm and his tax returns indicated he earned $56,171 in 1985, $66,079 in 1986, and an amount estimated between $75,000 and $80,000 for 1987. His wife was not employed outside the home and did not seek relief in bankruptcy. In exchange for a payment of $3,759, he had been permitted to retain his one-half interest in a condominium valued at $85,000 and subject to a mortgage of $68,000. On July 1, 1987, the Krohns netted $19,701.86 from the sale of the condominium for $98,500. They purchased a new home valued at $156,000, which was financed by Society National Bank on the condition that Krohn reaffirm his unsecured Mastercard debt of $19,-701.86. He owed $143,074 to unsecured creditors relating to credit cards and other lines of bank credit. He had repeatedly used cash advances from one creditor for partial payment to another.

According to his originally submitted budget, Krohn's monthly take-home pay was $4,015, of which $700 was allocated for food expenses, $150 for clothing, $435 for recreational expenses, and $200 for charitable contributions. In July 1987, he filed a new budget reducing his food allowance to $400 per month, recreational expenses to $110 per month, and charitable contributions to $110 per month; however, he increased his monthly miscellaneous expenses to between $95 and $200 per month, and miscellaneous gift expenses to $140 per month. He attributed the large food bills to his wife's dislike for cooking, and the large clothing allowance to her custom-made clothes.

The bankruptcy judge determined that Krohn had exhibited sufficient bad faith to warrant dismissal of his petition pursuant to § 707(b). Krohn's appeal from that decision was dismissed by the district court on May 12, 1988. 87 B.R. 926. Krohn appeals, suggesting that the bankruptcy court's findings of fact are clearly erroneous, and that it misinterpreted the term "substantial abuse" found in § 707(b).

## II.

One of the primary purposes of bankruptcy is to relieve an honest debtor from the weight of oppressive indebtedness and permit him to start afresh. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). A fresh start is afforded through discharge of all or a portion of his debts. Chapter 7 of the Bankruptcy Code allows discharge in exchange for liquidation of the debtor's assets for the benefit of his creditors, and Chapter 11 permits a debtor to rehabilitate his business and discharge debts by reorganizing, conducting his affairs, and paying creditors, in accordance with a court-approved plan, while under Chapter 13 a debtor may adjust the amount of his unsecured debts in exchange for dedicating to creditors a portion of his future income.

Section 707(b) was among the consumer credit amendments to the Bankruptcy Code enacted in 1984. Title III of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 355 (codified as amended in scattered sections

of 11 U.S.C. and 28 U.S.C.). These amendments were passed in response to an increasing number of Chapter 7 bankruptcies filed each year by non-needy debtors. *See In re Walton*, 866 F.2d 981, 983 (8th Cir. 1989) (citing S.Rep. No. 65, 98th Cong., 1st Sess. 3 (1983)). Under prior practice, aside from potential § 523(a) exceptions, § 707(a) dismissals, and § 727(a) objections to discharge, debtors enjoyed an unfettered right to a "fresh start" under Chapter 7, in exchange for liquidating their nonexempt assets for the benefit of their creditors. *See 3 Collier on Bankruptcy* ¶¶ 523.05A–523.-22 (15th ed. 1989); 4 *id.* at ¶¶ 707.01–707.-03, 727.014. Section 707(b) introduces an additional restraint upon a debtor's ability to attain Chapter 7 relief. *Walton*, 866 F.2d at 983 (§ 707(b) is more than a needless duplication of the "other provisions of the Code that have always required petitioners to file in good faith"). "[D]ismissal for substantial abuse is intended to 'uphold[ ] creditors' interests in obtaining repayment where such repayment would not be a burden.'" *In re Kelly*, 841 F.2d 908, 914 (9th Cir.1988) (quoting S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983)). Bankruptcy judges now have discretion "to dismiss a consumer case when the filing is abusive." 4 *Collier, supra,* ¶ 707.04, at 707–14.

In essence, § 707(b) allows a bankruptcy court to deal equitably with the unusual situation where an unscrupulous debtor seeks to enlist the court's assistance in a scheme to take unfair advantage of his creditors; it serves notice upon those tempted by unprincipled accumulation of consumer debt that they will be held to at least a rudimentary standard of fair play and honorable dealing.

■ Where debts are primarily consumer ones, then, a bankruptcy judge may, after notice and hearing, dismiss a debtor's Chapter 7 petition upon a finding that granting the requested relief would be a substantial abuse. Krohn's debts are undeniably consumer ones, *see* 11 U.S.C. § 101(7), and we are left to decide whether the bankruptcy judge correctly determined that granting Krohn relief would amount to a substantial abuse, as contemplated by the Bankruptcy Code. Because Congress chose not to define the term "substantial abuse," the task was left to the courts.

■ Those courts which have reviewed the legislative history, have generally concluded that, in seeking to curb "substantial abuse," Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor. *See Walton*, 866 F.2d at 983. In determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. *See 4 Collier, supra,* ¶ 707.07, at 707–20. Substantial abuse can be predicated upon either lack of honesty or want of need.

It is not possible, of course, to list all the factors that may be relevant to ascertaining a debtor's honesty. Counted among them, however, would surely be the debtor's good faith and candor in filing schedules and other documents, whether he has engaged in "eve of bankruptcy purchases," and whether he was forced into Chapter 7 by unforeseen or catastrophic events.

■ Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. *Walton*, 866 F.2d at 984–85; *Kelly*, 841 F.2d at 914–15 (collecting cases). That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the

degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

Krohn relies upon *In re Mastroeni*, 56 B.R. 456, 459–60 (Bankr.S.D.N.Y.1985), in suggesting that a § 707(b) dismissal is foreclosed by his inability to qualify for relief under Chapter 13 since his unsecured debts exceed $100,000. 11 U.S.C. § 109(e). Like the debtor in *Mastroeni*, Krohn does not qualify for relief under Chapter 13 and is not likely to benefit from Chapter 11 relief because he has only minimal assets with which to propose a plan. Accordingly, he argues that, if he is denied Chapter 7 relief, he will be denied the fresh start contemplated by the Code. To be sure, a debtor's eligibility for Chapter 13 relief should be considered in ascertaining his ability to repay his debts out of future earnings. However, inability to qualify under Chapter 13 should not be dispositive of whether there may be a § 707(b) dismissal, since there are other factors to be considered in deciding if a debtor is needy. The anomalous result of saying those whose high unsecured indebtedness renders them ineligible for Chapter 13 treatment can always avoid § 707(b) dismissal, would be rewarding outrageous abusers of consumer credit, while denying to those with more moderate consumer debt the benefits of Chapter 7. Indeed, such a bright-line test could be said to encourage debtors to run up unsecured debts in excess of $100,000, thereby avoiding dedication of future earnings to debt retirement under Chapter 13.

■ Nor are we persuaded by the argument that Krohn is entitled to relief under *some* provision of the Bankruptcy Code. There is no constitutional right to a bankruptcy discharge, and the "fresh start" provided for by the Code is a creature of congressional policy. *United States v. Kras*, 409 U.S. 434, 446–47, 93 S.Ct. 631, 638–39, 34 L.Ed.2d 626 (1973). Congress, within the limits set by the Constitution, is free to deny access to bankruptcy as it sees fit. *Id.* at 447, 93 S.Ct. at 639. Here, its failure to specifically provide for linkage between Chapters 7 and 13 is evidence that Congress believed there are some circumstances where it would not be equitable to grant a particular debtor a fresh start.

### III.

■ The bankruptcy judge focused upon Krohn's honesty and found sufficient evidence of bad faith to warrant a substantial abuse dismissal:

In the schedule of current income and current expenditures as originally submitted, the debtor indicates a monthly income of $4,015 with monthly expenses of $3,950.... Subsequent to filing for relief, the debtor and his wife sold their condominium.... The itemization of current expenses submitted by the debtor pursuant to the court's section 707(h) motion indicates the following expenses for the period April–June, 1987: $1,065.61 for dining out, lunch and recreation; $355.06 for groceries consisting of food; $169.84 for cosmetics; $66.49 for cigars; $671.99 for clothes; $256.18 for gasoline; and $1,477.78 for mortgage payments.

There appear to be no "eve of bankruptcy purchases" but rather a consistent pattern of living on credit or beyond the debtor's means. At no point in the debtor's history, either before or after filing for chapter 7 relief, has the debtor shown a sincere resolve to repay his obligations and/or to reduce his monthly expenses. The debtor admits to making only minimum monthly payments so as to keep the accounts current.... As further evidence of his bad faith, the debtor seeks a discharge only of those unsecured debts held in his name alone and not a discharge of any credit cards held jointly with his wife and, as his wife did not file bankruptcy, she continues to maintain those credit cards solely in her name. The debtor treats his creditors in a callous manner and indulges in a lifestyle in excess of a reasonable standard of living.

The goals of bankruptcy are to provide an honest debtor with a fresh start and

# 128

to provide for an equitable distribution to creditors. The debtor herein, although he has minimal assets, appears to be seeking a "head start" with no attempt to deal with creditors on an equitable basis.

All this, plus Krohn's ample future income, his financial situation not having been the product of any unforeseen or catastrophic event, and a catalogue of excess after the petition was filed, demonstrate an attempt to seek advantage over creditors.

And, while Krohn may not qualify for Chapter 13 relief, he has, as the bankruptcy judge noted, state remedies available, in addition to good, old-fashioned belt tightening.[2] Surely the bankruptcy judge would have been warranted in concluding that Krohn could have pursued state remedies for at least the time required to reduce his unsecured debt to the point that Chapter 13 relief would be available.

Accordingly, the bankruptcy judge correctly determined that invocation of the presumption (actually a statutory preference) found in § 707(b), in favor of granting relief, was inappropriate under the evidence, and in concluding that granting relief to Krohn would amount to a substantial abuse, since the totality of the circumstances demonstrated the absence of the degree of honesty and need contemplated by § 707(b).

## IV.

For the foregoing reasons, the decision of the district court that affirmed the bankruptcy judge's dismissal of Krohn's Chapter 7 petition as a substantial abuse is affirmed.

---

2. For example, under Ohio law, Krohn may voluntarily assign to a trustee a portion of his monthly earnings and obtain protection from his creditors. Ohio Rev.Code Ann. § 1313.01 *et seq.* (Anderson 1979).