**In re Sandra Kay SHEPHERD, Debtor.**

**Bankruptcy No. 92–50240.**

United States Bankruptcy Court,
N.D. Ohio.

Nov. 19, 1992.

William E. Howard, Akron, Ohio, for debtor.

Derek V. Rippey, Office of the U.S. Trustee, Cleveland, Ohio.

Anne Piero Silagy, Chapter 7 Trustee, Akron, Ohio.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION OF THE U.S. TRUSTEE TO DISMISS

HAROLD F. WHITE, Bankruptcy Judge.

On January 31, 1992, Sandra Kay Shepherd (hereinafter "debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Anne Piero Silagy was appointed Trustee in the matter.

On April 23, 1992, the U.S. Trustee for Region IX, Conrad J. Morgenstern (hereinafter "UST") filed a motion with this court requesting that the submission of the petition by Sandra Kay Shepherd be dismissed pursuant to 11 U.S.C. § 707(b). The UST alleged the filing of the petition constituted a substantial abuse. *See* the "Motion to Dismiss."

The debtor filed a response on June 8, 1992. On June 10, 1992, this court entered an Order finding that the Motion to Dismiss should be treated as a contested matter pursuant to Federal Rule of Bankruptcy Procedure 9014. The matter is a core proceeding over which this court has jurisdiction pursuant to 28 U.S.C. § 157(a)(2)(A). There are three complaints pending against the debtor for determination of the dischargeability of a debt. These complaints were filed by Sterling Incorporated, May Company, and ITT Financial Services. All of these matters were held in abeyance

pending the determination of the Motion to Dismiss.

The Motion to Dismiss was duly scheduled for trial on October 5, 1992. At the trial there were two witnesses, the debtor and Gary Justin Sippe, Ph.D., psychologist.

The court, after considering the testimony and the evidence submitted, having an opportunity to observe the demeanor of the witnesses, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The debtor is a 28–year–old woman, who left school in the tenth grade; however, she does have a high school equivalent degree. She is employed by the Coldwell Banker/T.K. Harris Agency Company, Canton, Ohio, as a licensed real estate sales person under the laws of the State of Ohio.

2. The debtor's total adjusted gross income from the sale of real estate in 1989 was $3,176.00, $3,669.00 in 1990 and $5,290.00 in 1991. *See* Exhibits A, C and B.

3. At the time of filing her petition, the debtor listed secured debts totalling $13,-500.00 and unsecured debts totalling $50,-894.90, for a total debt of $64,394.90. Schedules D and F.

4. The court finds from the testimony that the debtor, during the period of time prior to February, 1991, incurred debts of approximately $20,000.00. However, there was no evidence that debtor was delinquent on the payment of her bills before February, 1991. To the contrary, the testimony and evidence indicated that her credit rating prior to February, 1991 appears to be good.

5. Furthermore, the court finds that from August, 1991 to November, 1991, the debtor paid at least $1,769.19 in debts to unsecured creditors. *See* Exhibit D4F, check number 795 payable to St. Thomas Hospital for $310.50; Exhibit D, check number 796 payable to Beneficial Ohio Inc. for $1,311.95; Exhibit D4G, check number 811 payable to ITT Executive/professional for $126.74; Exhibit D4H, check number 824 payable to ITT Financial Services for

$10.00; and Exhibit D4J, check number 847 payable to Leroy's Jewelers for $10.00.

6. The debtor had a live-in relationship for a period of seven years with Monte Rogers, also known as Jack Rogers. Mr. Rogers' present age is 56 years old.

7. On February 6, 1991, the debtor's brother was murdered. The debtor borrowed funds to contribute to his funeral and to attend the murder trial.

8. The deceased brother's girlfriend subsequently gave birth to a child who suffered crib death.

9. Monte Rogers was charged in 1991 with the rape of a 6–year–old girl. The debtor was threatened by the police that she would be charged as an accomplice if she did not testify against Mr. Rogers. No charges were ever filed against the debtor. However, Mr. Rogers was indicted, and because of said charges, he lost his business and his livelihood. He went on public assistance during this period of time. The debtor made substantial contributions to Mr. Rogers' defense and made payments to William Howard, his attorney. *See* Exhibit D4A, check number 711 payable to Bill Howard for $200.00, and Exhibit D4I, check number 837 payable to Bill Howard for $500.00.

10. Further, on or about August 13, 1991, the debtor's younger brother was indicted and convicted of murder.

11. During the same period, the debtor's close personal friend, a female, was killed.

12. The court finds from the testimony and evidence that there is no evidence that the debtor personally benefited from the debts she incurred. Most of the purchases made by the debtor between the period of February 1, 1991 and January 31, 1992, the petition date, were for the benefit of either Monte Rogers, the debtor's brother or other members of her family, particularly her mother. The court further finds that the debtor's payments made for obligations of Mr. Rogers from January, 1991 to October, 1991 totalled at least $1,393.64. *See* Exhibit D2A, check number 662 payable to Jack Rogers for $20.00; Exhibit D2B, check

number 686 payable to Jack Rogers for $345.00; Exhibit D2C, check number 695 payable to Sears Mortgage Corp. for $146.64; Exhibit D3, check payable to Sears Mortgage Corp. for $141.00; Exhibit D4B, check number 727 payable to Sears Mortgage Corp. for $141.00; Exhibit D4K, check number 836 payable to Jack Rogers for $100.00; Exhibit D4C, check number 740 payable to Monte Rogers for $150.00; Exhibit D4D, check number 786 payable to Jack Rogers for $300.00; Exhibit D4E, check number 790 payable to Jack Rogers for $50.00.

13. The court finds from the testimony of Gary Justin Sippe, Ph.D., licensed psychologist by the State of Ohio, that the debtor had psychological problems due to the five tragic events that affected her life in 1991. Debtor suffered post-traumatic stress and because of a loss of the close relationships of the persons involved, she suffers from survivor guilt. This is common, especially among former members of the Armed Forces who served in the Viet Nam War. Dr. Sippe testified that the debtor's prime motive for her many purchases and credit charges was not dishonesty but an attempt by her to replace her emotional loss by helping people with material benefits.

14. The court finds from Dr. Sippe's testimony that this survivor guilt complex can be exhibited by physical violence, by the use of drugs, suicide or activities as exhibited by the debtor in this case.

15. Dr. Sippe indicated that he concurred with the conclusions of Max H. Parks, a Licensed Clinical Psychologist, regarding the debtor. Mr. Parks stated in a report regarding the debtor that he did not believe she was a dishonest debtor. *See* Exhibit D–6.

16. Between July and August, 1991, the debtor received a pre-approved acceptance certificate for a $5,000.00 loan from ITT Financial Services. Exhibit D–2. From the testimony of the debtor, the court finds that the information on the form appears to be incorrect in that the debtor did not own real estate on July 16, 1991 at the value of $75,000.00, nor was her annual income $25,-000.00. However, it is apparent that ITT extended the credit to the debtor and did not bother to check any records to determine the ownership of the property. The debtor alleges that said property is owned by Mr. Rogers, and she assumed she had an interest in it because of their relationship.

17. The court finds that the debtor did make payments on her First Card account as agreed. Exhibit G. The cash advance of September 5, 1991 was unsecured in the amount of $4,300.00 and was used to pay Mr. Rogers' attorney fees. Exhibit G.

18. The UST offered no evidence to contradict the testimony of the debtor or Gary Justin Sippe.

## ISSUE

Has the UST presented sufficient evidence, pursuant to 11 U.S.C. § 707(b), that the granting of relief to the debtor, as provided for under Chapter 7, would be a substantial abuse of the provisions of Chapter 7?

## CONCLUSIONS OF LAW

The UST asserts that the debtor should be denied the relief provided for under Chapter 7, pursuant to 11 U.S.C. § 707(b), as it would be a substantial abuse of the provisions of Chapter 7. Section 707(b) provides that:

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

Section 707(b) "was added to chapter 7 in response to concerns that some debtors who could pay their creditors might resort to chapter 7 to avoid their obligations." 4 *Collier on Bankruptcy* para. 707.04 (15th ed. 1992). The party seeking dismissal of

the Chapter 7 case has the burden of proof. 11 U.S.C. § 707(b).

"One of the primary purposes of bankruptcy is to relieve an honest debtor from the weight of oppressive indebtedness and permit him to start afresh. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)." *In re Krohn*, 886 F.2d 123, 125 (6th Cir.1989).

A "fresh start" is afforded a Chapter 7 debtor through discharge of all or a portion of his debts in exchange for liquidation of his non-exempt assets for the benefit of creditors.

In *Krohn*, the Sixth Circuit explained that:

> In essence, § 707(b) allows a bankruptcy court to deal equitably with the unusual situation where an unscrupulous debtor seeks to enlist the court's assistance in a scheme to take unfair advantage of his creditors; it serves notice upon those tempted by unprincipled accumulation of consumer debt that they will be held to at least a rudimentary standard of fair play and honorable dealing.

886 F.2d at 126.

In determining whether to apply § 707(b) to a debtor the court should:

> "ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. *See 4 Collier, supra,* para. 707(b), at 707–20. Substantial abuse can be predicated upon either lack of honesty or want of need."

886 F.2d at 126.

■ Factors to consider when determining the honesty of the debtor are the debtor's good faith and candor in filing schedules, whether the debtor engaged in "eve of bankruptcy purchases" and whether the debtor was forced into Chapter 7 by unforeseen or catastrophic events. *Id.*

■ Some of the factors considered in deciding whether a debtor is needy are his ability to repay his debts out of future earnings, the existence of a stable source of future income, the possibility that the debtor may be eligible for Chapter 13 adjustment or debt relief through private negotiations with creditors, and whether the debtor's expenses can be significantly reduced without depriving him of adequate food, clothing, shelter and other necessities. *Krohn*, 886 F.2d at 126–127.

■ In review of the totality of the present circumstances it appears that the debtor is "honest" in that she has not sought an advantage over her creditors and she is "needy" in that her present financial predicament warrants discharge of her debts.

The evidence in this case supports the conclusion that the debtor is "honest" for purposes of § 707(b). The debtor listed all her debts and property in her schedules. (Finding No. 3) There is no evidence before the court to contradict the schedules, the debtor's testimony, or indicate that the debtor acted in bad faith. (Finding No. 18)

The evidence does indicate that the debtor purchased gifts for several parties prior to bankruptcy, however, the evidence also indicates that the debtor made efforts to pay for these purchases. (Findings Nos. 5 and 17)

The evidence overwhelmingly establishes that debtor was forced into Chapter 7 bankruptcy due to the catastrophic events in her life in 1991. In 1991, the debtor's live-in companion, Monte Rogers, was charged with the rape of a six-year-old girl. During this time, the debtor was threatened by the police in order to testify against Monte Rogers. The debtor also made substantial financial contributions to Monte Rogers' defense attorney. (Finding No. 9).

During this same period of time the debtor suffered more tragic events. Her brother was murdered (Finding No. 7), her younger brother was convicted of murder (Finding No. 10), and her close personal friend was killed (Finding No. 11).

The evidence further establishes that due to these tragic events the debtor suffered

post-traumatic stress and because of the loss of the close relationships of the persons involved, she suffers from survivor guilt. (Finding No. 13).

Dr. Sippe testified that debtor's numerous purchases for others was a common expression of survivor guilt. (Finding No. 14) He stated that debtor's purchases were made in an effort to replace her emotional loss by helping people with material benefits. Dr. Sippe stated that "dishonesty" was not the motive for the debtor's purchases and credit card charges. (Finding No. 13). In his report, Max H. Parks, a licensed Clinical Psychologist, made similar statements that the debtor was not a dishonest person, but rather purchased items due to her survivor guilt and suffering the many tragic events in her life. (Finding No. 15).

Finally, the evidence clearly establishes that the debtor is in need of the discharge of her debts under the Bankruptcy Code. It is highly unlikely that the debtor will have sufficient future income to fund a Chapter 13 plan which would pay a substantial portion of the claims of the unsecured creditors. "Most bankruptcy courts equate the ability to fund a chapter 13 plan with the ability to repay at least fifty percent of unsecured debts in three to five years." *Fonder v. United States,* 23 B.C.D. 739, 740, 974 F.2d 996 (8th Cir.1992). The debtor earned $5,290.00 in 1991 and earned even less in 1989 and 1990. (Finding No. 2). Debts owed to unsecured creditors total $50,894.90. (Finding No. 3). Therefore, requiring the debtor to repay her debts, or even fifty percent of her debts, would cause her substantial economic hardship.

Moreover, based upon the very modest annual income of the debtor and no evidence of a stable source of future income, the court finds it unrealistic to expect her to repay her debts through a Chapter 13 plan, private negotiations with creditors, or otherwise.

This court believes that the debtor, a victim of tragedy and life's misfortunes, deserves the "fresh start" contemplated by the Bankruptcy Code. The evidence overwhelmingly supports this decision.

Therefore, this court concludes that the UST has not met its burden in proving that granting relief to the debtor would be a substantial abuse of the provisions of Chapter 7. Therefore, the UST's request to dismiss the debtor's case shall be denied.