**In re Clifford/Michele BOYER, Debtors.**

No. 04–34831.

United States Bankruptcy Court,
N.D. Ohio.

Dec. 2, 2004.

458

Christi L. Brown, Lima, OH, for debtor.

Bruce C. French, Lima, OH, trustee.

### *DECISION AND ORDER*

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss pursuant to 11 U.S.C. § 707(b). In relevant part, this section provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter.

As a determination of an action brought under this provision directly involves the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, this matter is a core proceeding over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(J)/(O); 1334.

In order to be successful, a motion to dismiss under § 707(b) requires that three elements be established: (1) the debtor must be an individual; (2) the debts must be primarily consumer debts; and (3) the granting of relief must constitute a "substantial abuse." *In re Wisher,* 222 B.R. 634 (Bankr.D.Colo.1998). In this matter, only the last of § 707(b)'s elements—"substantial abuse"—is at issue. In *In re Krohn,* the Sixth Circuit Court of Appeals addressed this element, holding that it "can be predicated upon either a lack of honesty or want of need." 886 F.2d 123, 126 (6th Cir.1989).

On these separate components of a "substantial abuse" analysis, the United States Trustee bases its position primarily on "want of need." In doing so, the United States Trustee relies on those figures set forth in Debtors' original bankruptcy petition which show that they have the ability to fully fund a Chapter 13 plan of reorganization in less than 30 months. (Doc. No. 10). In terms of actual numbers, the Debtors listed in their petition $34,542.76 in total outstanding unsecured debt; and, after imputing to their income a voluntary contribution made to a 401(k) plan, the figures put forth by the Debtors reveal that they have the ability to devote $1,270.00 per month toward the repayment of this unsecured debt. (Doc. No. 10, at pg. 2).

In line with the position of the United States Trustee, the Sixth Circuit has held that, while all relevant circumstances should be taken into account, of primary consideration in any "want of need" analysis under § 707(b) is whether and the extent to which a debtor can adequately fund a Chapter 13 plan of reorganization. *Behlke v. Eisen,* 358 F.3d 429, 435 (6th Cir.2004). In this matter, the Debtors do not take issue with this legal statement; nor do the Debtors disagree

that those figures set forth in their original bankruptcy petition show that they have the ability to fully fund a Chapter 13 plan of reorganization in well less than three years. Instead, in opposition to the position taken by the United States Trustee, the Debtors rely on the inaccuracy of those figures they put forth in their original bankruptcy petition. In their own words:

> ... Debtors have filed an Amended J setting forth the true expenses of Debtors. Pursuant to Debtors Amended Schedule J, Debtors have monthly expenses totaling $3,518.00. Taking the Debtors' net monthly income of $3,658.00 as proposed by the United States Trustee and subtracting $3,518.00 in monthly expenses, Debtors' only have $140.00 in excess monthly income. Said amount is insufficient to pay Debtors' unsecured debts totaling $34,542.76. In applying the excess disposable income toward repayment of the debts, it would take debtors approximately 247 months or 20.59 years ($34,542.76/$140.00) to repay the unsecured creditors.

(Doc. No. 13, at pg. 1). Based upon the above statement, the question in this matter becomes not whether the Debtors have the "need" for bankruptcy relief—they clearly do, assuming the accuracy of their revised expense figure—but why were those items contributing to the Debtors' revised expense figure not accurately disclosed in their original bankruptcy petition.

■ The integrity of the bankruptcy process rests upon a debtor in both their petition and schedules making a complete and accurate disclosure of all required information. *In re Unruh,* 278 B.R. 796, 803 (Bankr.D.Minn.2002). In recognition of this, the Sixth Circuit in *In re Krohn* put forth an "honesty" component in a § 707(b) analysis, holding that, among oth-

er things, "honesty" may be predicated upon a showing of "good faith and candor in filing schedules and other documents[.]" 886 F.2d at 126. In support of their "good faith and candor" in filing their bankruptcy petition, the Debtors put forth their need to subsequently revise upward their monthly expense figures was the result of "underestimating food costs, medical costs and transportation costs," and thus should be viewed as a honest mistake. (Doc. No. 13, at pg. 1).

■ Recently, this Court examined the Sixth Circuit's "good faith and candor" component in the context where, as here, a debtor subsequently amends their bankruptcy schedules after a § 707(b) motion to dismiss is filed. As relevant in this particular matter, this Court stated:

> A mistake or omission contained in a bankruptcy schedule will be found to be inadvertent, and thus properly subject to amendment, when a debtor lacks knowledge as to the misinformation. Whether a debtor truly lacks knowledge as to the misinformation contained in a petition is decided primarily on the basis of two considerations: (1) the extent and degree of the misinformation; and (2) whether there existed a motive to provide the misinformation. Both these considerations bear negatively for the Debtors.
>
> To begin with, when considering their overall financial condition, the Debtors' revised monthly figures, for both existing and new expenses, increased by approximately One Thousand dollars when including [Debtor's] 401(k) contribution. While realizing that month-to-month variations in income and expenses are inevitable, it stretches the imagination that, if owed and in existence prepetition, the Debtors would innocently forget to set forth such a significant amount in prepetition expenses—several

hundred dollars, possibly; a thousand dollars, no. Also, from a prepetition viewpoint, the honest nature of the Debtors' revisions is stretched even further when one adds motive into the equation.

As previously pointed out, of primary importance in a "substantial abuse" analysis under § 707(b) is the amount of "disposable income" a debtor potentially has available to fund a Chapter 13 plan of reorganization. Thus, to withstand a § 707(b) motion a debtor has a substantial incentive to show his or her disposable income as low as possible. In line therewith, the Debtors' revised monthly expenses were conveniently able to eliminate almost all their "disposable income"—thereby making the funding of a plan of reorganization facially impossible. Moreover, this was accomplished despite major changes, both up and down, in each of the Debtors' income. Therefore, for these reasons, to analyze this case from the perspective that the Debtors were, through their amended schedules, merely making changes to what were otherwise inadvertent prepetition omissions, raises an acute credibility problem as to the honest nature of the figures. Given this credibility problem, the burden clearly shifts to the Debtors to put forth a viable and strong explanation for the mistakes and omissions.

*In re Pier*, 310 B.R. 347, 358–59 (Bankr. N.D.Ohio 2004).

▉ The circumstances presented in this case have obvious similarities to that of *In re Pier*, above. First, the Debtors' position is not helped by the fact that those upward revisions in their monthly expenses were anything but minor, totaling $1,130.00 or approximately one-third of their net monthly income. Equally problematic is the career listed by the majority

wage earner of the Debtors' household: Information System Supervisor—a position which obviously requires great attention to detail. Yet, no such attention to detail was headed by the Debtors when coming before this Court, thus raising the obvious question as to whether the Debtors attached much importance to their bankruptcy. In this regard, it would not be out of the ordinary to assume that had such a lack of attention to detail been the norm in his profession as an Information System Supervisor, an involuntary change of careers would be imminent.

Also, like the *In re Pier* decision, the Debtors had a clear incentive to upwardly revise their monthly expenses. With specificity, the upward revisions in the Debtors' monthly expenses, by closely equalizing their monthly expenses with their income, conveniently made any meaningful repayment under a Chapter 13 plan of reorganization impracticable, thereby ostensibly making the "need" based component of § 707(b) a nonissue. Also problematic in this regard is that the increase in the Debtors' expenses occurred primarily in areas that naturally vary month-to-month, and therefore are easy to manipulate. By way of example, the Debtors' amended monthly budget set forth the following revisions: an increase of $200.00 per month for food, a $257.00 increase for transportation expenses (excluding auto payment), and a completely new monthly expense of $116.00 for cable, internet and trash pickup.

In rebuttal to these negative inferences, the Debtors submitted to the Court a number of bills and receipts related to those expenses for which they listed increases. However, this evidence, besides being disorganized, only presents a small snapshot of the Debtors' expenses, and thus lacks any cohesiveness. Put differently, presenting a few bills and receipts

for things such as food, gasoline and utilities does not establish a monthly average—i.e., just because one week a certain amount is spent for an expense does not mean that the same will be true week-to-week and thus month-to-month. As a consequence, without the Debtors providing additional evidence so as to give context to these receipts and bills, this evidence lacks supportive value.

On the other hand, the circumstances surrounding the Debtors' bankruptcy filing have a major distinguishing factor from *In re Pier:* a recent major medical event. As presented to the Court, one of the Debtors recently underwent an organ transplant. And, in this regard, it is the Debtors' contention that this event—because of its negative financial implications stemming from medical costs and loss of employment income—necessitated the filing of their bankruptcy petition.

In considering the Debtors' position, the facts of this case show that a large portion of their unsecured debt was medically related, and that one of the Debtors receives minimal monthly payments from Social Security Disability. (Doc. No. 1, Schedule F). Based, therefore, upon these facts, the Court does not question that the organ transplant served as the primary catalyst underlying the filing of the Debtors' bankruptcy petition. Equally important from a legal standpoint, the Sixth Circuit in *In re Krohn* specifically recognized the type of situation encountered by the Debtors, holding that among those factors which should be considered in determining a debtor's honesty for purposes of § 707(b) is whether the debtor "was forced into Chapter 7 by unforeseen or catastrophic events." *Id.* at 126.

Therefore, when all is boiled down, the Court is left to decide whether the Debtors, in accordance with the Sixth Circuit's decision in *In re Krohn,* acted "honest-ly"—thus entitling them to proceed with their bankruptcy—based upon these two opposite concerns: (1) the common sense assumption that it would be difficult for people in the Debtors' position, who net just over $3,000.00 per month, to innocently forget that they have over $1,000.00 in monthly expenses; (2) but set against this, the Court must take into account that, based upon serious medical concerns, the Debtors were potentially preoccupied with other matters, and thus did not fully consider their monthly expenses. After giving this matter careful consideration, the Court comes to the conclusion that the weight of these competing concerns tips ever so slightly in the Debtors' favor.

■ First, § 707(b) is structured in such a way that any reasonable doubts must be resolved in favor of the debtor. Of primary importance, Congress set the bar of § 707(b) high, modifying the word "abuse" with "substantial," thus ensuring that the mere appearance of an impropriety in a case would be insufficient to warrant a dismissal. In a like manner, § 707(b) sets forth that "[t]here shall be a presumption in favor of granting the relief requested by the debtor." Finally, to prevent creditor overreaching, only the court or the United States trustee is entitled to bring a § 707(b) action. Looked at together then, if both the positive and negative considerations bearing on dismissal under § 707(b) are roughly equal, as they appear to be here, relief must be accorded to the debtor.

■ Second, bankruptcy courts are courts of equity; therefore, in the end, whether a debtor is entitled to proceed with a bankruptcy case is, by extension, an equitable matter. *In re Krohn,* 886 F.2d at 126 (holding that § 707(b) gives discretion to dismiss for abusive filing and allows bankruptcy courts to deal equitably with such debtors). Applied here, the Court, as

already elaborated upon, has great trouble with the Debtors only providing what they term their "true expenses," after the United States Trustee filed its Motion to Dismiss. But, at the same time, the Court is also cognizant of the fact that if a dismissal were to occur, the Debtors would have the right to refile, and, presuming that their revised monthly expense figures are accurate, would likely be able to proceed with their new case. Thus, given what the Debtors have already been through, the Court does not feel that a just end would be served by dismissing this case.

In reaching the conclusions stated herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the United States Trustee to Dismiss pursuant to 11 U.S.C. § 707(b), be, and is hereby, DENIED.