**In re Kelly PETERLIN, Debtor.**

**No. 11–10826.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

June 2, 2011.

Glenn E. Forbes, Painesville, OH, for Debtor.

### *MEMORANDUM OF OPINION AND ORDER*

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court on the Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1) and (b)(3) (the "Motion") filed by the United States Trustee for Region 9 (the "UST") over the objec-

tion of Kelly Peterlin (the "Debtor"). This Court acquires core subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), 28 U.S.C. § 1334 and General Order No. 84 of the District. After the conclusion of a duly noticed evidentiary hearing, an examination of the evidence admitted and a review of the record, generally, the following factual findings and conclusions of law are hereby rendered:

\*

On February 2, 2011, the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). Debtor has been employed as a teacher for sixteen years and earns approximately $70,000.00 per year. Debtor's husband, who is not a party to these proceedings, is employed in sales and earns a base salary of approximately $50,000.00 per year. Debtor and her husband have five minor children. Debtor's Schedule D lists secured debt of $369,702.44, the bulk of which is the first mortgage on her residence in the amount of $316,827.34. Her Schedule F lists unsecured debts of $115,339.47, of which amount $96,349.07 is related to a judgment against her from a creditor involved in her husband's business. This petition is her only bankruptcy filing.

Concurrently with their bankruptcy petition, Debtors filed their Form 22A Means Test (the "Means Test"). They listed a household size of seven. The median family income for a family of seven in Ohio is $93,953.00. *See* www.usdoj.gov/ust for median income for a family of seven in Ohio. Thusly, the Debtor is an above-median income debtor. The Debtor indicated on her Means Test that the presumption of abuse does not arise.

\* \*

The UST asserts that the Debtor's case should be dismissed because, under the totality of the circumstances, granting the Debtor a Chapter 7 discharge would be an abuse under 11 U.S.C. § 707(b)(3). The UST contends that the Debtor is retaining a home valued at $312,600.00 while offering nothing to her unsecured creditors. He asserts that the Debtor is continuing to pay private school tuition for her minor children. The UST further notes that the Debtor and her husband received a 2010 federal tax refund of $9,896.00, which could have been used to repay creditors.

The Debtor contends that the arguments offered by the UST are not sufficient to dismiss her case as abusive under the totality of the circumstances test. She argues that, despite the value of her home, her family does not lead an extravagant lifestyle. She further contends that she chose private school for her children because she wanted them to attend a religious school and that private school tuition is not necessarily grounds for abuse. Furthermore, she contends that neither her income nor her husband's income will be stable in the future, and that it is not certain that she will receive a large tax refund in the coming years.

\* \* \*

The dispositive issue before this Court is whether the Debtor's petition for relief constitutes an abusive filing.

\* \* \* \*

Section 707 of the Bankruptcy Code provides for dismissal of a Chapter 7 case or conversion to a case under Chapter 11 or Chapter 13. A case warrants dismissal where a court finds that the granting of relief would constitute an abuse of the Chapter 7 provisions.

Title 11 U.S.C. § 707(b) states the following:

(b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any

party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or

(II) $11,725.

Sections 707(b)(2)(A)(ii), (iii) and (iv) describe the applicable and actual expenses that a debtor may claim,

If the presumption of abuse does not arise or is rebutted, then the court considers the totality of the circumstances under 11 U.S.C. § 707(b)(3).

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider-

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Section 707(b)(2)(A) of the Bankruptcy Code sets forth the criteria for a presumption of abuse and constitutes the means test for a debtor's ability to repay his debts. The means test presents a statement of the debtor's current monthly income and shows whether a presumption of abuse arises as a consequence of identifying monthly disposable income in excess of the limits described under Section 707(b)(2)(A)(ii), (iii) and (iv). A debtor's monthly disposable income is determined by deducting certain allowances and other expenses from the debtor's current monthly income. A presumption of abuse arises and the debtor fails the means test if the debtor's 60-month disposable income is greater than the amounts calculated under Section 707(b)(2)(A)(i)(I) and (II).

The standard expense allowances determined by the Internal Revenue Service ("IRS") for use in completing bankruptcy forms are posted at: http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm. There are standards listed for allowable living expenses including food, housekeeping supplies, apparel & services, personal care products & services, and miscellaneous items. The standards are based upon the number of members in the household and their gross monthly income.

The inquiry for a motion to dismiss pursuant to § 707(b) of the Bankruptcy Code does not end with the determination of whether the presumption of abuse arises. Section 707(b)(3) grants a court the authority to dismiss a Chapter 7 case, where the presumption of abuse does not arise, for either bad faith or the totality of the circumstances if the debtor's financial situ-

ation demonstrates abuse. 11 U.S.C. § 707(b)(3).

■ The Bankruptcy Code does not define the term "totality of the circumstances." Notwithstanding, two Sixth Circuit Court of Appeals decisions, *Behlke v. Eisen (In re Behlke),* 358 F.3d 429 (6th Cir.2004) and *In re Krohn,* 886 F.2d 123 (6th Cir.1989), provide guidance on the totality of the circumstances test for dismissal under § 707(b). Among the factors to be considered in deciding whether the totality of the circumstances warranted a dismissal of the debtor's case under § 707(b), the *Krohn* court opined:

> A court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities,

*In re Krohn,* 886 F.2d at 126; *accord Behlke v. Eisen,* 358 F.3d at 435.

\* \* \* \* \*

■ To meet the burden established in 11 U.S.C. § 707(b) for dismissal, the UST must prove by a preponderance of the evidence standard that granting relief would constitute abuse. *In re Browne,* 253 B.R. 854, 856–7 (Bankr.N.D.Ohio 2000).

The Debtor's Means Test indicates that the presumption of abuse does not arise, and the UST does not dispute that assertion. Rather, the UST is seeking to dismiss the Debtor's case pursuant to Section 707(b)(3). Since the UST has not alleged the Debtor acted in bad faith, this Court renders its decision herein on the basis of the totality of the circumstances.

■ In the present case, the Debtor is gainfully employed and has been so employed for a number of years. She earns a gross monthly income of $6,244.90, and her husband earns a gross monthly income of $4,166.67. (UST Exh. 2–21). The Debtor and her husband received federal tax refunds of $16,740 in 2008, $13,569 in 2009, and $9,896 in 2010. (Debtor's Exh. A–2, A–21, A–32, respectively). The UST avers that the Debtor's household income level, coupled with the large lax refunds received in prior years, demonstrates abuse. The Debtor contends that the stability of her income is in jeopardy with the passage of Ohio Senate Bill 5, which she testified will make changes to the amount she is required to pay for insurance and retirement savings, and will decrease her job security by instituting a merit pay system. (Peterlin, K., Direct). Her husband also testified that he is not doing as well as expected in his current job and is likewise concerned about the stability of his income. He further asserted that the tax refunds were due to the Child Tax Credit, which was to be phased out. (Peterlin, R., Direct), Although the Supreme Court held in *Hamilton v. Lanning* that "projected disposable income" is a forward-looking concept, it stated that adjustments may be made for future changes that are "known or virtually certain." —— U.S. ——, 130 S.Ct. 2464, 2471, 177 L.Ed.2d 23 (2010). Although the Debtors assert they are uncertain about the stability of their income, this uncertainty does not reflect events that are "known or virtually certain," Debtor testified that any changes from Senate Bill 5 would not be implemented until the beginning of school year 2013, over two years away. (Peterlin, K., Cross). Debtor's

husband testified that the Child Tax Credit will still be available for the full amounts for tax years 2011 and 2012. (Peterlin, R., Cross). Debtor's husband's uncertainty about the future of his job is likewise not sufficiently certain to render their income unstable. A substantial level of income weighs in favor of abuse. *See In re Wadsworth,* 383 B.R. 330, 333 (Bankr.N.D.Ohio 2007)("Under any measure, a debtor, having a stable annual salary of almost $100,000.00, will be hard pressed to establish that they do not have the ability to pay some of their unsecured debt ... [t]his is especially true since the implementation of BAPCPA, which makes the standard for dismissal less stringent...."). The size and stability of Debtor's household income is not, however, the only basis for dismissal.

The Debtor's residence is valued at $312,600, according to her Schedule A, and her Statement of Intention indicates that she intends to reaffirm the first mortgage and retain the property. (UST Exh. 2–8 and 2–33, respectively). The property is also encumbered by a second mortgage held by Debtor's husband's parents. Debtor's Schedule D indicates that the second mortgage is wholly unsecured, and although Debtor's Statement of Intention does not speak to the second mortgage, Debtor's husband testified at trial that his parents were aware that their debt was subject to discharge. Debtor testified at trial that the first mortgage payment had recently increased to $3,086 from $3,008, and that she was current on the first mortgage. (Peterlin, K., Cross). She testified that no payments have been made on the second mortgage. (Peterlin, K., Cross). In other cases in this District, courts have found abuse where the debtor seeks to retain a house with substantial value and a mortgage payment well above the IRS National Standards. *See In re Wadsworth,* 383 B.R. at 334 (finding that a monthly housing expense of $2,646, including utili-

ties and maintenance, was a "substantial sum for any debtor that pleads an inability to repay,"), *In re Oot,* 368 B.R, 662, 669–670 (Bankr.N.D.Ohio 2007) (finding that a $4,000 per month expense for housing was abusive). The Debtor's means test indicates that the applicable IRS standard for housing is $1,145 per month. (UST Exh. 2–44). It is impermissible for the Debtor to retain an expensive home with a monthly mortgage payment more than double the IRS National Standards while offering nothing to her unsecured creditors.

Debtor's Schedule J lists an expense of $553 per month, listed as "school." (UST Exh. 2–23). The Debtor testified that this expense is tuition at a private parochial school for her three school-age children. She testified that she chose to put her children in private school based on the quality of education and discipline, and that she wanted them to receive a Catholic education. Phil Lamos, Chief Counsel for the Chapter 13 Trustee, testified that if this expense were eliminated, it would result in an additional $30,000 to unsecured creditors, yielding a dividend of approximately twenty-five percent. (Lamos, P., Direct). Such testimony was unrefuted. While courts are divided over whether private school tuition is a reasonable and necessary expense, most cases hinge on a factual analysis examining the reasonableness and necessity of such an expense in the context of satisfying a debtor's basic needs. *In re Crim,* 445 B.R. 868, 871 (Bankr.M.D.Tenn.2011). Although there is a public policy favoring education, in the bankruptcy context private school tuition is considered a luxury expense that "amounts to a debtor requiring his or her creditors to donate toward his children's education," *In re Gilmore,* 2010 WL 2342441, *4 (Bankr.N.D.Ohio 2010)(quoting *Educational Credit Mgmt. Corp. v. Savage (In re Savage),* 311 B.R. 835, 841 n. 9 (1st Cir. BAP 2004)). The Debtor has not

presented any persuasive evidence that the available public school is insufficient or that her children have special needs that require private schooling. She is instead opting to pay private school tuition at the expense of her unsecured creditors.

Furthermore, Mr. Lamos testified that the Debtor's vehicle loan will be paid off during her applicable Chapter 13 plan period. (Lamos, P., Direct), The funds used to pay the vehicle loan would then go to unsecured creditors, and in his estimation would result in approximately a three to five percent dividend to unsecured creditors. (Lamos, P., Direct). Although Debtor's husband testified that they would likely need to purchase a new vehicle once the current loan is paid off, Mr. Lamos noted that if a new vehicle was needed during a Chapter 13 plan, the Debtor's circumstances would be evaluated if and when that need arose, and that debtors can not "plan ahead" and deduct expenses that have not yet arisen. (Lamos, P., Cross).

The Debtor testified that she is current on all her debt payments, with the exception of the second mortgage held by her husband's parents. Her filing was precipitated by a pending wage garnishment resulting from the judgment against her by one of her husband's business creditors. The debt owed to this creditor makes up the vast majority of her unsecured debt.

Herein, the Debtor and her husband enjoy a sufficiently stable above-median income. She is seeking to retain a residence valued at over $300,000 and continue paying private school tuition at the expense of her unsecured creditors. The Debtor's large tax refunds would provide an additional source of payment to her unsecured creditors. She could provide a substantial dividend to her unsecured creditors by simply devoting the funds from her tax refunds and private school tuition. The Debtor's case is hereby de-termined to be an abuse pursuant to § 707(b)(1) and (b)(3).

\* \* \* \* \* \*

Accordingly, the UST's motion to dismiss pursuant to 11 U.S.C. § 707(b)(1) and (b)(3) is well premised and hereby granted. The Debtor's Objection thereto is hereby overruled. Each party is to bear its respective costs.

**IT IS SO ORDERED.**