**In re James M. KEHL and Heidi A. Kehl, Debtors.**

**No. 10–65068.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division,
Detroit.

Dec. 7, 2011.

Kenneth S. Sebree, Detroit, MI, for Debtors.

***OPINION REGARDING THE UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE UNDER 11 U.S.C. § 707(b)(3)***

WALTER SHAPERO, Bankruptcy Judge.

The matter before the Court is the United States Trustee's Motion to Dismiss under 11 U.S.C. § 707(b)(3)[1] (Docket No. 21). The Court held an evidentiary hearing and took the matter under advisement.

1. The UST's original Motion to Dismiss also raised issues under 11 U.S.C. § 707(b)(2). However, due to the responses provided by the Debtors to that original Motion and the figures provided on Debtors' Amended Form 22A, the UST is no longer moving for dismissal under that section.

## I. *BACKGROUND*

James and Heidi Kehl ("Debtors") filed their Chapter 7 bankruptcy petition on August 7, 2010. The United States Trustee ("UST") filed a Motion to Dismiss their case (Docket No. 21). Debtors oppose the Motion.

The Debtors are married and have two dependents, a one year old son and a three year old daughter. Mr. Kehl is a Kia and SAAB automotive technician working full-time at Glassman Automotive, and Mrs. Kehl works part-time as a registrar at Beaumont Hospital. The Debtors' tax returns reflect $106,012 in combined gross income in 2008, and $87,183 in combined gross income in 2009 (which decreased due to Mrs. Kehl taking time off work after the birth of their son). Debtors' paystubs show that their gross income for 2010 exceeds $97,000. During the evidentiary hearing, Mr. Kehl testified that there has been a decrease in the number of Kia and SAAB vehicles being brought in for service at Glassman Automotive and, as a result, his income decreased at the end of 2010. Mr. Kehl also operated a landscaping and snow-plowing business, Big K Outdoor Services, however he apparently ceased operating for some time after he sold his pick-up truck. Mr. Kehl testified that he hoped to resume the landscaping portion of the business, but he has not since filed any amendments to his schedules indicating any additional income from such. Debtors' Schedule F reflects $66,862 in unsecured debts, which almost entirely consists of credit card bills for consumer purchases. Debtors testified that their bankruptcy filing was primarily caused by those credit card debts, and that the minimum payments became too much for their budget to bear over time.

In its Motion to Dismiss, the UST argues that elimination of only Mr. Kehl's 401K contribution of some $423.24 per month and contribution of Debtors' continuing income tax refunds (approximately $4,000 per year) for a 60 month period (the required length of a Chapter 13 plan), less potential attorney fees and Chapter 13 oversight expenses, would produce payments of approximately 60% of the unsecured debt in this case. The Trustee argues that, even with no reduction in their current standard of living, the Debtors have the ability to make a significant repayment to their unsecured creditors.

## II. *DISCUSSION*

Authority to dismiss a case under Chapter 7 is derived from 11 U.S.C. § 707(b)(1), which provides, in part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1). In those cases where the presumption of abuse does not arise, as here, or is otherwise rebutted, and where bad faith is not a factor, the Court is directed to consider the totality of the circumstances in determining whether dismissal for abuse is warranted. 11 U.S.C. § 707(b)(3)(B). The UST bears the burden of establishing by a preponderance of the evidence that the case should be dismissed as an abuse under § 707(b)(3). *In re Beckerman,* 381 B.R. 841, 844 (Bankr.E.D.Mich.2008).

### A. *Ability to Pay*

In determining whether this case constitutes an "abuse" under § 707(b)(3),

the Court must examine the totality of the circumstances and determine whether the Debtors are "honest" and "needy". *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989); *In re Behlke*, 358 F.3d 429, 434 (6th Cir. 2004). "'[H]onest,' in the sense that [Debtors'] relationship with [their] creditors has been marked by essentially honorable and undeceptive dealings, and [. . .] 'needy' in the sense that [their] financial predicament warrants the discharge of [their] debts in exchange for liquidation of [their] assets." *Krohn*, 886 F.2d at 126.

There is no allegation or indication that Debtors have been anything other than honest in their relationship with their creditors, and therefore the inquiry is limited solely to whether Debtors are "needy" of a chapter 7 discharge. In making determinations as to neediness, courts have looked to the following non-exclusive factors:

> (a) whether the Debtor has the ability to repay his debts out of future earnings; (b) whether the Debtor enjoys a stable source of future income; (c) whether the Debtor is eligible for chapter 13 relief; (d) whether there are state remedies with the potential to ease the Debtor's financial predicament; (e) whether relief may be obtained through private negotiations with creditors; and (f) whether expenses can be reduced significantly without depriving the Debtor of adequate food, clothing, shelter and other necessities.

*In re Beckerman*, 381 B.R. at 845 (citing *In re Krohn*, 886 F.2d at 126–27).

In this case, the Debtor enjoys a stable source of future income and is eligible for Chapter 13 relief. The factor most applicable to the Court's analysis in this case is (f), whether the Debtors' expenses can be significantly reduced without depriving them of adequate food, clothing, shelter and other necessities.

As noted, the UST argues that elimination of only Mr. Kehl's 401K contribution of some $423.24 per month and contribution of Debtors' continuing income tax refunds (approximately $4,000 per year) for a 60 month period (the required length of a Chapter 13 plan), less potential attorney fees and Chapter 13 oversight expenses, would produce payments of approximately 60% (or approximately 39,850) of the unsecured debt in this case. Debtors respond by arguing that (1) they will need the 401K plan for retirement purposes and (2) they may need their tax refund to pay business taxes Mr. Kehl's business accrued while it was operating.

### i. *401K Contributions*

This Court has previously examined the issue of whether voluntary contributions to a retirement plan are per se unnecessary expenses for purposes of determining disposable income in a hypothetical Chapter 13 plan, and found such contributions not to be per se unreasonable, but they must be examined on a case-by-case basis. *In re Beckerman*, 381 B.R. at 848. In determining whether such a contribution is necessary to the maintenance and support of a debtor, the Court looks to factors such as: (1) amount of any existing retirement savings; (2) the debtor's age and time left until retirement; (3) annual income and overall budget; (4) amount of monthly contributions; and (5) needs of any dependents. *Id.*

Debtors are in their early thirties and have saved approximately $22,000 toward their retirement. As noted, Mr. Kehl is currently contributing $423.24 per month toward his 401K plan. As also noted, Debtors make approximately $97,000 per year, which is more than $20,000 above the applicable median income for a family of four in Michigan. Their overall budget also has some room for some belt-tighten-

ing, if necessary, and for additional unexpected expenditures. With continuing contributions after the completion of a 60-month plan at the same level as before, and assuming a modest 3% return on investments, the Debtors will have approximately $232,093 by the time they reach the age of 60. The point here is that, even if Debtors were in a Chapter 13 plan, their age and circumstances are such that, absent any contributions during the life of the plan, that account would still accrue a substantial amount to help see the Debtors thru their retirement years.

Under the totality of the circumstances, the Court finds that the 401K contribution in this case is unnecessary and should not be deducted when determining disposable income for the fund of a hypothetical Chapter 13 plan. In light of the above, the Court finds that the $423.24 401K contribution should be included in disposable income available to fund a hypothetical plan. Eliminating that monthly expense alone from Debtors' budget would produce a significant and meaningful distribution (some $25,394.40) to unsecured creditors in a Chapter 13 case, as such, the Court concludes that Debtors are not "needy" of a Chapter 7 discharge.

ii. *Tax Refunds*

 Debtors' Schedule B reflected an anticipated income tax refund of some $4,611.00 for 2010, which is apparently the typical refund that Debtors have historically received. Debtors argue that they may need their tax refund to pay business taxes accrued by Mr. Kehl's business in 2009. The UST argues that, even if that were true, that argument is insufficient to support a complete disregard of the Debtors' future tax refunds.

Even conservatively estimating the Debtors' expected tax refunds at $4,000 per year going forward, those refunds would generate some $20,000 per year in a 60-month Chapter 13 plan. As Debtors have not made an argument that those refunds are necessary for their support, the Court agrees with the UST that such should be considered disposable income available to fund a Chapter 13 plan.

iii. *Decrease in Debtors' Income*

As noted, Mr. Kehl testified that his income decreased toward the end of 2010 due to a decrease in the number of Kia and SAAB vehicles being brought in for service at Glassman Automotive. This decision takes that particular decrease into account. The evidence as to any further decreases actually occurring, or if likely to occur, and by what amount, is not sufficiently sure or clear as would permit a change in the result. In that regard, it needs to be kept in mind that if Debtors convert their case to Chapter 13 and those decreases materialize in the future, Debtors can account for such by filing a proposed Chapter 13 plan modification, or possibly converting the case back to Chapter 7 if the circumstances call for such. However, at this time and based on the facts and circumstances presently before the Court, granting the Debtors relief under Chapter 7 of the Code would be an abuse of the provisions of that chapter given the totality of the circumstances.

### III. *CONCLUSION*

For the forgoing reasons, the UST's Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(3) is **GRANTED**. Debtors are allowed thirty days from the date of this opinion to file a motion to convert to a Chapter 13 case. If such is not done within that time period, the case will be dismissed by separate order of the court.