**In re Sean Robert and Joy Treva SCHUBERT, Debtor.**

No. 07–11511.

United States Bankruptcy Court, S.D. Ohio, Western Division.

March 4, 2008.

Eric W. Goering, Cincinnati, OH, for Debtor.

Douglas N. Hawkins, Office of the United States Trustee, Cincinnati, OH, for U.S. Trustee.

## ORDER GRANTING MOTION TO DISMISS UNDER 11 U.S.C. § 707(b)(3)

J. VINCENT AUG, JR., Bankruptcy Judge.

This matter is before the Court on the United States Trustee's ("UST") motion to dismiss pursuant to 11 U.S.C. § 707(b)(3) (Doc. 32), the Debtors' response (Doc. 35), and the UST's supplemental memorandum (Doc. 62). A hearing was held on February 26, 2008.

The Debtor husband is a deputy sheriff and the Debtor wife is a registered nurse. Their combined gross annual income at the time of the hearing was $102,122. The Debtors' amended Schedule I and J show their average net monthly income to be $6,472.93 and their average monthly expenses to be $6,461.81. Their tax refund for 2006 was $11,424.[1] The UST estimated their tax refund for 2007 to be $6,000.[2]

The Debtors value their home at $260,000. There is no equity in the property. Their monthly mortgage payment on their first mortgage is $1,764 and their monthly mortgage payment on their second mortgage is $501, for a total of $2,265. The IRS housing allowance for a family of four is $1,108, or less than half what the Debtors are spending on their mortgage payments.

At the time of the filing of the petition, the Debtors possessed three vehicles: a leased 2004 Dodge Durango, a leased 2006 Ford F–150, and a 2005 Chrysler Town & Country. They also owned a 25 foot Rinker boat valued at $28,000. Their monthly boat payments were $444. Sometime after the petition was filed, the Debtors surrendered the 2006 Ford F–150, the 2005 Town & Country and the boat. They traded in the Durango for a van. Their second vehicle is a 1997 Ford F–150 purchased for them by the husband's father. They assert that both vehicles need to be replaced and for this purpose, they have included $800 monthly for car payments in their amended Schedule J.[3]

At the time the Debtors purchased the house and the boat, they were earning more money. Both Debtors testified that they left higher paying jobs to be able to spend more time with their two young children. The husband previously earned more money working in construction. The Debtors' attorney stated at the hearing that the wife's job change "caused" the bankruptcy.[4]

Up until the time they filed their petition, the Debtors were tithing $250 to their church. They have since stopped tithing.

The Debtors' unsecured debts total $81,511, of which $44,112 is student loan debt.

 This Court has recently analyzed 11 U.S.C. § 707(b)(3):

Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), there was only one type of motion to dismiss under § 707(b), that being a motion to dismiss for "substantial abuse" based on the "totality of the

---

1. This computes to $952 monthly.

2. This computes to $500 monthly.

3. The husband and wife offered conflicting testimony as to whether or not the 1997 vehicle was safe for the children.

4. The wife previously earned $35 an hour. She now earns $25.50 an hour.

circumstances." *In re Mestemaker*, 359 B.R. 849 (Bankr.N.D.Ohio 2007). Under BAPCPA, there are two types of motions to dismiss. Where a presumption of abuse arises, a motion may be filed under § 707(b)(2). Where the presumption of abuse does not arise, a motion to dismiss for abuse may be filed under § 707(b)(3). The latter type of motion was filed in this case. Section 707(b)(3) expressly states that a court "shall consider—(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances ... of the debtor's financial situation demonstrates abuse." Given the use of the conjunction "or," a showing of bad faith is not necessary for the UST to prevail under § 707(b)(3).

Congress has lowered the standard from requiring a showing of "substantial abuse" to a showing of "abuse." *See In re Mestemaker.* Nevertheless, the pre-BAPCPA cases are still be instructive, such as *In re Behlke*, 358 F.3d 429 (6th Cir.2004), wherein the Sixth Circuit found substantial abuse where the debtor could pay 14 to 23% of his unsecured debt under a hypothetical 3 to 5 year Chapter 13 plan.

*In re dePellegrini*, 365 B.R. 830 (Bankr. S.D.Ohio 2007)(Aug, J.). Other courts which have addressed BAPCPA's § 707(b)(3) have concluded that the debtor's ability to pay a fairly modest percentage to the unsecured creditors may result in a finding of abuse. *In re Mestemaker*, 359 B.R. 849 (Bankr.N.D.Ohio 2007)(10 to 15%); *In re Hess*, 2007 WL 3028422 (Bankr.N.D.Ohio Oct. 15, 2007)(14%).

■ The Sixth Circuit case of *In re Krohn*, 886 F.2d 123 (6th Cir.1989) remains instructive as to the various factors to be considered when viewing the requisite "totality of the circumstances." Factors that may be relevant include the debtor's good faith and candor in filing his schedules, whether the debtor made any purchases on the eve of bankruptcy, whether the debtor was forced into bankruptcy by an unforeseen or catastrophic event, the debtors' ability to repay his debts out of future earnings with relative ease, whether the debtor enjoys a stable source of future income, whether the debtor is eligible for debt adjustment under chapter 13, the availability of state remedies, the availability of relief through private negotiations, and whether the debtor can significantly reduce his expenses without depriving himself of adequate necessities. *Id.* at 126–27.

This court, as well as other courts, have also considered whether the debtors have shown a consistent pattern of living on credit or beyond their means. *In re dePellegrini*, 365 B.R. 830 (debtor wished to give his two adult sons the same lifestyle they had before debtor's divorce); *In re Frerick*, Case No. 00–16936, (Bankr. S.D.Ohio July 31, 2001)(Aug, J.)("reduced income for an extended period of time requires a change in lifestyle"); *In re Smith*, 229 B.R. 895 (Bankr.S.D.Ga.1997)(debtors attempted to "force their unsecured creditors to absorb the expenses of the lifestyle they have maintained but could no longer afford").

■ The determination of a debtor's ability to pay is to be made at the time of the hearing. *In re Pennington*, 348 B.R. 647, 650–51 (Bankr.D.Del.2006).

■ The UST has the burden of proof by a preponderance of the evidence. *In re Summer*, 255 B.R. 555, 563 (Bankr. S.D.Ohio 2000)(Caldwell, J.).

■ The UST contends that if the Debtors were to pay $190 monthly into a chapter 13 plan, they could pay 14% of their unsecured debts. The Debtors challenge this figure, contending that they would have to pay $257 a month. The Debtors

contend they have no ability to make any payment. The UST contends that the Debtors do have the ability to repay their creditors something but that they have chosen to make no effort to do so.

Focusing on the various factors that comprise the "totality of circumstances," we observe that both Debtors have excellent jobs which should provide a stable source of future income. Further, the Debtors' combined gross annual income of $102,122 is sizeable. We easily conclude that the Debtors have the ability to make a monthly payment of *at least* $250 and, therefore, the ability to pay their unsecured creditors a meaningful percentage without depriving themselves or their children of adequate necessities. *See In re Krohn,* 886 F.2d 123. The source of funds could be a tax refund[5], an adjustment in their withholding, reduced spending on housing and/or vehicles and/or general daily belt-tightening. A $250 plan payment would be far less than their previous monthly boat payment of $444.

This bankruptcy was not caused by an unforeseen or catastrophic event. Rather, it was caused by one or both Debtors' desire to have jobs with more predictable hours at less pay. We are not criticizing the Debtors for making these family-oriented decisions. However, it is elemental that a reduced income for an extended period of time requires a change in lifestyle. *See, e.g., In re dePellegrini,* 365 B.R. 830. The Debtors' reluctance to change their lifestyle is supported by their failure to surrender their boat and third vehicle at the point in time when their incomes became reduced. Also, the Debtors' reluctance to change their lifestyle is supported by their generous tithing in the pre-petition period. Lastly, we note the husband's testimony that the second mortgage was taken out in 2002 to "to pay bills" and that the mortgage was refinanced in 2006 "to pay bills." This testimony is indicative of the fact that the Debtors have been living beyond their means for an extended period of time.

The Debtors would like to be able to earn less than their full earning capacity, keep their expensive home, generously replace their cars, and pay their creditors nothing. This is abuse under § 707(b)(3).

Accordingly, the UST's motion to dismiss is hereby GRANTED.

IT IS SO ORDERED.