**In re Dennis P. and Diana Axt PANDL, Debtor.**

No. 08–16344.

United States Bankruptcy Court, S.D. Ohio, Western Division.

April 7, 2009.

Mark A. Greenberger, Cincinnati, OH, for Debtors.

Douglas N. Hawkins, Office of the United States Trustee, Cincinnati, OH, for U.S. Trustee.

### ORDER GRANTING MOTION TO DISMISS UNDER 11 U.S.C. § 707(b)(3)

J. VINCENT AUG JR., Bankruptcy Judge.

This matter is before the Court on the United States Trustee's ("UST") motion to dismiss pursuant to 11 U.S.C. § 707(b)(3) (Doc. 13) and the Debtors' response (Doc. 17).

The Debtor husband is a sales representative and the Debtor wife is also employed. The Debtors' Schedule I indicates a combined gross annual income of $133,500, however, the Debtor husband has had a recent decrease in salary and the Debtors' current combined gross annual income is $115,500. The Debtors' Schedule I and J show their average net monthly income to be $6,585 and their average net monthly expenses to be $7,552, for an average net monthly result of *negative* $966.[1]

---

1. The Debtors' monthly negative cash flow is even larger in view of the Debtor husband's salary decrease.

The Debtors make a monthly 401(k) contribution of $263 and two monthly 401(k) loan repayments totaling $651.

The Debtors received $8,590 in tax refunds in 2008, which translates to an additional $716 in monthly income if the Debtors reduced their withholding.

The Debtors spend $1,970 per month on their mortgage payments or 1.75 times the IRS housing allowance.[2] The Debtors value their house at $270,000. The house is encumbered by a first mortgage with a balance due of $233,036 and a second mortgage with a balance due of $56,600; there is no equity in the property.

The Debtors' total secured debt is $281,471 and their total unsecured debt is $92,029.

■ Although the Debtors are currently in a negative income position, the UST contends that if the Debtors were to eliminate the 401(k) contribution, eliminate their 401(k) loan repayments, adjust their withholding and/or modestly reduce their housing costs from 1.75 to 1.5 of the IRS allowance, the Debtors could pay 61 % of their unsecured debt, and that the case should be dismissed for "abuse." Essentially, the Debtors contend they have no ability to make any payment.

As modified by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), 11 U.S.C. § 707(b)(3) states that a court "shall consider—(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances … of the debtor's financial situation demonstrates abuse." Given the use of the conjunction "or," a showing of bad faith is not necessary for the UST to prevail under § 707(b)(3). Further, Congress has lowered the standard from requiring a showing of "substantial abuse" to a showing of "abuse." *See In re Mestemaker,* 359 B.R. 849 (Bkrtcy.N.D.Ohio 2007). Nevertheless, the pre-BAPCPA cases are still instructive, such as *In re Behlke,* 358 F.3d 429 (6th Cir.2004), wherein the Sixth Circuit found substantial abuse where the debtor could pay 14 to 23% of his unsecured debt under a hypothetical 3 to 5 year Chapter 13 plan. *In re Schubert,* 384 B.R. 777 (Bankr.S.D.Ohio 2008)(Aug, J.); *In re dePellegrini,* 365 B.R. 830 (Bankr. S.D.Ohio 2007)(Aug, J.). Other courts which have addressed BAPCPA's § 707(b)(3) have concluded that the debtor's ability to pay a fairly modest percentage to the unsecured creditors may result in a finding of abuse. *In re Mestemaker,* 359 B.R. 849 (10 to 15%); *In re Hess,* 2007 WL 3028422 (Bkrtcy.N.D.Ohio Oct. 15, 2007)(14%).

■ The Sixth Circuit case of *In re Krohn,* 886 F.2d 123 (6th Cir.1989) remains instructive as to the various factors to be considered when viewing the requisite "totality of the circumstances." Factors that may be relevant include the debtor's good faith and candor in filing his schedules, whether the debtor made any purchases on the eve of bankruptcy, whether the debtor was forced into bankruptcy by an unforeseen or catastrophic event, the debtors' ability to repay his debts out of future earnings with relative ease, whether the debtor enjoys a stable source of future income, whether the debtor is eligible for debt adjustment under chapter 13, the availability of state remedies, the availability of relief through private negotiations, and whether the debtor can significantly reduce his expenses without depriving himself of adequate necessities.

■ The UST has the burden of proof by a preponderance of the evidence. *In re*

---

**2.** The IRS housing allowance is $1,132. *See* Doc. 13, Ex. # 1.

*Summer,* 255 B.R. 555, 563 (Bankr. S.D.Ohio 2000)(Caldwell, J.).

■ There is no question that tax refunds should be included in the calculation of a debtor's income for purposes of § 707(b)(3), as long as there is a realistic expectation that the refunds will continue prospectively. *See In re Gonzalez,* 378 B.R. 168 (Bankr.N.D.Ohio 2007). The Debtors contend that their 2008 tax refund has already been allocated to the Chapter 7 Trustee. The Debtors' contention supports the UST's position: that this money should be paid to the Debtors' unsecured creditors.

■ There is also no question that 401(k) contributions should be included in the calculation of a debtor's income for purposes of § 707(b)(3). To hold otherwise would force a debtor's creditors to fund the debtor's retirement plan. *See In re Croskey,* 2007 WL 1302571 (Bankr. N.D.Ohio 2007).

The Debtors contend that their 401(k) loan repayments should not be included in the calculation of a debtor's income for purposes of § 707(b)(3) because, pursuant to 11 U.S.C. § 1322(f), 401(k) loan repayments are not considered disposable income. However, as explained in *In re Felske,* 385 B.R. 649, 658 (Bankr.N.D.Ohio 2008), § 1322(f) is limited in its applicability to a debtor who has filed a Chapter 13 case, and including a debtor's 401(k) loan repayment in the context of determining abuse under § 707(b)(3) is appropriate, especially since 401(k) loan repayments are finite in length. Further, the possibility of incurring a tax penalty is an inherent risk taken by debtor who borrows against his 401(k) account. *In re Croskey,* 2007 WL 1302571. A debtor's taking of such a risk should not insulate his actions to the prejudice of his creditors.

■ The Debtors acknowledge that their housing cost is 1.75 more than the IRS housing allowance for a family of their size. The Debtors contend that if they are forced to sell the house, there may be a resulting deficiency balance. This is not a defense to the UST's motion. If a deficiency occurs, it will be treated as additional unsecured debt. *See In re Felske,* 385 B.R. at 657 ("... this Court will not be held hostage to the argument that the potentiality of a deficiency from a debtor's sale of collateral should militate against dismissal under 707(b)(3)"). The Debtors also contend that the mortgage payments are now as high as they are because of a "balloon adjustment" and not because of repeated refinancings. Contrary to the Debtor' implied position that balloon notes are financially wise, a balloon note is typically demonstrative of a debtor purchasing more house than he can afford, even if the decision to sign the balloon note was made years ago.

■ The Debtor wife also contends that she was "not fully apprised of the precarious financial situation of the parties." Although we are sympathetic to her situation, dismissal of a case for abuse under § 707(b)(3) may be predicated upon either bad faith or totality of the circumstances. The UST has not contended that either of the Debtors has filed this case in bad faith.

Focusing on the various factors that comprise the "totality of circumstances," we observe that both Debtors have a stable source of income. The Debtors have a sizeable annual income, despite the Debtor husband's recent salary reduction. This bankruptcy was not caused by an unforeseen or catastrophic event. The Debtors are eligible to file a Chapter 13 case.

We agree with the UST and conclude that the Debtors have the ability to make a monthly payment of as much as $937 and, therefore, the ability to pay their unse-

cured creditors a meaningful percentage—61 %—without depriving themselves or their children of adequate necessities. *See In re Krohn,* 886 F.2d 123. The source of funds is the following: $263 [401(k) contribution]; $651 [401(k) loan repayments]; $716 [tax refund allocation]; $272 [housing savings if paid 1.5 IRS housing allowance rather than 1.75] less $966 [Debtors' current monthly shortfall]. Even a lesser monthly payment would still result in a meaningful percentage for the unsecured creditors well within the boundaries of existing case law.

Furthermore, there is no financial logic behind the Debtors' desire to keep a $270,000 house with no equity when the Debtors have a *negative* monthly income of $1,000 or more.[3] Indeed, if the Debtors were to continue on their present path, the Debtors will not get a fresh start.

Accordingly, the UST's motion to dismiss is hereby GRANTED; provided the Debtors shall have 20 days from the entry date of this Order to convert their case to a case under Chapter 13.

IT IS SO ORDERED.

---

**3.** The Debtors' statement of intent shows that they intend to reaffirm both mortgages. A reaffirmation agreement has been filed as to the second mortgage.