**In re John O. DUPUY.**

**No. 10–10160.**

United States Bankruptcy Court, S.D. Ohio, Western Division.

July 14, 2010.

Norman L Slutsky, Cincinnati, OH, for John Dupuy.

## ORDER GRANTING MOTION
## TO DISMISS CASE

J. VINCENT AUG, JR., Bankruptcy Judge.

This matter is before the Court on the United States Trustee's motion to dismiss the case pursuant to 11 U.S.C. § 707(b)(3) (Doc. 17) and the Debtor's response (Doc. 25).

The United States Trustee ("Trustee") contends that this case should be dismissed under either 11 U.S.C. § 707(b)(3)(A) based on bad faith or under 11 U.S.C. § 707(b)(3)(B) based on the totality of the circumstances. The Trustee posits two arguments. First, the Trustee contends that a Debtor who earns $59,928 a year and has $115,900 in unsecured debt should not reaffirm on a residence valued at $400,000. Second, the Trustee contends that if the Debtor were to adjust his tax withholding, he could afford to make a meaningful distribution to his creditors

■ A case may be dismissed either upon a finding of bad faith or a finding of abuse under the totality of the circumstances. *In re Schubert,* 384 B.R. 777, 780 (Bankr.S.D.Ohio 2008)(Aug, J.). A debtor's ability to repay a fairly modest percentage to the unsecured creditors may result in a finding of abuse. In re Mestemaker, 359 B.R. 849 (Bankr.N.D.Ohio 2007)(10 to 15%); *In re Hess,* 2007 WL 3028422 (Bankr.N.D.Ohio Oct.15, 2007)(14%).

■ This court, as well as other courts, have also considered whether the debtors have shown a consistent pattern of living on credit or beyond their means. *In re dePellegrini,* 365 B.R. 830 (Bankr.S.D.Ohio 2007)(Aug, J.)(debtor wished to give his two adult sons the same lifestyle they had before debtor's divorce); *In re Frerick,* Case No. 00–16936 (Bankr.S.D.Ohio July 31, 2001)(Aug, J.)("reduced income for an

extended period of time requires a change in lifestyle"); *In re Schubert,* 384 B.R. 777, 780 (Bankr.S.D.Ohio 2008)(Aug, J.)(abuse found where debtors chose to earn less than full earning capacity and keep expensive home).

■ Various factors to be considered when viewing the requisite totality of the circumstances include the debtor's good faith and candor in filing his schedules, whether the debtor made any purchases on the eve of bankruptcy, whether the debtor was forced into bankruptcy by an unforeseen or catastrophic event, the debtors' ability to repay his debts out of future earnings with relative ease, whether the debtor enjoys a stable source of future income, whether the debtor is eligible for debt adjustment under chapter 13, the availability of state remedies, the availability of relief through private negotiations, and whether the debtor can significantly reduce his expenses without depriving himself of adequate necessities. *In re Krohn,* 886 F.2d 123 (6th Cir.1989)(decided pre-BAPCPA where movant had to show substantial abuse).

## I.

With regard to the tax refund, the Trustee alleges that the Debtor had a "net" tax refund in 2008 of $16,838.00 and that if the Debtor were to adjust his withholding, he could afford to pay $1,403 monthly towards his unsecured debt.[1] The Debtor counters that "for the same period the Debt [or] had a federal tax liability of $99,336.00 of which he had to pay an additional tax of $22,852.00, more than offsetting the state tax refund." It is unclear whether the Debtor is alleging that he owed federal taxes in the amount of $99,336.00, $22,

852.00, or even $99,336.00 plus $22,852.00. Further, neither party has presented sufficient evidence to substantiate their position. In any event, we find it unnecessary to resolve this question of fact since there are other grounds upon which to grant the Trustee's motion.

## II.

■ The Debtor is retired and receives social security, VA benefits, and other retirement income totaling $4,994 monthly or $59,928 yearly. The Debtor's wife, who did not file bankruptcy, is a self-employed consultant who has a current income of $0 pursuant to the Debtor's Schedule I.

The Debtor and his wife own a home which they value at $400,000. It is encumbered by two mortgages with monthly payments totaling $2,248.81.[2] The Debtor's Schedule J indicates the following monthly costs associated with their home: $400 for electricity/fuel, $95 for water/sewer, $53 for trash, and $60 for household protection insurance. The Debtor's aggregate total housing cost approximates $2,500 monthly. The IRS housing and utilities standard for the Debtor is $969.

There is a total balance due of $324,757 on the mortgages, with a resulting equity in the property of $75,243. The Debtor intends to reaffirm both mortgages.

The Debtor's unsecured debt in the total amount of $115,900 consists of nine credit card debts, all for "miscellaneous purchases" and/or "cash advances" in amounts varying from $4,000 to $27,500.

The Debtor offers the following defenses: First, that "while the bankruptcy would release the Debtor of his obligations

---

1.  $1,403 monthly paid over a period of 5 years would yield $84,180, or a 72% payment to the unsecured creditors.

2.  This value is taken from the Debtor's Form B22A. The Debtor's Schedule I indicates that the monthly home mortgage payment is $1,890.

under the mortgage it does not release the non-debtor spouse thus leaving a massive liability." Second, that "the unsecured debt is solely the obligation of the Debtor whose sole source of income is his fast depleting retirement funds and social security." Third, that "the wife of the Debtor is attempting to develop a consulting business and [is] not capable of supporting the debt structure herself."

It is clear from the Debtor's own above-stated defense, as well as from the credit card debt amassed by the Debtor, that he and his wife have long been living in a home they cannot afford. If the Debtor and his wife were to sell the house, thereby also reducing their aggregate housing expense to even one and a half of the IRS standard, the Debtor could easily make a meaningful distribution of 54% to his unsecured creditors.[3] The Debtor and his wife are actually in the fortunate position of being able to sell their house for a sufficient price to pay their mortgage holders in full and use the Debtor's share of the remaining proceeds to make an *additional* 15% distribution to the Debtor's unsecured creditors.[4] If the Debtor's wife contributed her share of the equity, this would yield yet another additional 15% distribution. Although we recognize that the debts are "his" debts, it is extremely likely that the Debtor's wife has benefitted from the Debtor's sizeable miscellaneous purchases and cash advances.

The Debtor's apparent unwillingness to pay his unsecured creditors is reflected in the Debtor's refusal to engage in any financial belt-tightening. The Debtor's Schedule J shows a monthly telephone ex-

pense of $285, a monthly cable expense of $275, and a monthly internet expense of $65, or a monthly total of $625. These are not "adequate necessities" at these prices. *See In re Krohn*, 886 F.2d 123. If the Debtor were to contribute even half of this amount towards his credit card debt, he could make a meaningful distribution of 16% to his unsecured creditors.[5]

In view of the above sources of income available to the Debtor, we conclude that the Debtor can easily make a meaningful distribution to his unsecured creditors.

Addressing additional factors that compromise the "totality of circumstances," we note that the Debtor was not forced into bankruptcy by an unfortunate or catastrophic event. *Id.*

The Debtor is asking this Court to allow him and his non-filing wife to keep an expensive house that they cannot afford at the expense of the Debtor's unsecured creditors. Indeed, the Debtor is asking this Court to allow his non-filing wife to have an opportunity to "develop a consulting business" at the expense of *his* unsecured creditors. We find that the Debtor's motivation for filing his bankruptcy petition is one of bad faith.

Accordingly, we hereby DISMISS this case for bad faith under 11 U.S.C. § 707(b)(3)(A) and for the totality of the circumstances under 11 U.S.C. § 707(b)(3)(B).

IT IS SO ORDERED.

---

**3.** IRS standard of $969 times 1.5 = $1,454. Debtor's current aggregate housing expense of $2,500 less $1,454 = $1,045 available. $1,045 monthly paid over a period of 5 years would yield $62,700 or a 54% return to the unsecured creditors.

**4.** $75,243 equity in property less 10% cost of sale ($40,000) = $35,243. Debtor's share is $35,243/2 = $17,621 which would yield a 15% return to the unsecured creditors.

**5.** $312.50 monthly paid over a period of 5 years would yield $18,750, or a 16% return to the unsecured creditors.